### 11622

### CARTER v. AMERICAN FRUIT GROWERS, INC.

#### (125 S. E., 641)

1. EVIDENCE—ACCOUNT SALES COVERING OTHER SHIPMENTS HELD ADMISSIBLE TO SHOW NATURE OF TRANSACTION.—In action involving issue whether goods were shipped to defendant on contract of sale or on consignment, account sales covering other shipments, tending to show shipment on consignment, *held* admissible, in view of evidence that plaintiff received the account sales without objection, and accepted net proceeds, and his own testimony that all shipments were made on same basis.

2. APPEAL AND ERROR—EXCEPTION COMPLAINING OF CHARGE HELD TOO GENERAL FOR CONSIDERATION.—Exception that "charge of the presiding Judge to the jury was insufficient and inadequate," *held* too general for consideration.

Before HENRY, J., Colleton, October, 1923. Reversed and remanded.

Action by A. P. Carter against the American Fruit Growers, Inc. Judgment for plaintiff and defendant appeals.

The letters referred to in opinion follow:

"Lodge, S. C., July 8, 1922

"American Fruit Growers,

"Charleston, S. C.

"Gentlemen:

"I am sending you bill of laden of fourth car of melons. I will have seven or eight cars for next week if the weather will permit me to load them they will be very good. I hope that you Gentlemen will be able to handle all my melons to a great advantage for me. It will be highly appreciated

when sending returns for these melons to me please send me bill of each car.

"Thanking you Gentlemen for your kindness,

"Yours very Respectfully,

"A. P. CARTER."

"Lodge, S. C., July 26, 1922.

"American Fruit Growers.

"Gentlemen:

"I am receiving return from my cars from time to time now and I think that you all have done fine for the melons that you have sent me returned for. they were very small melons You have some good melons on hand yet that I shipped you I hope they will come out as good as a return I got from you yesterday that Car No. 31943 netted $90.00. I turned that over to an old Gentleman at Ehrhardts, S. C. this morning, it did him so much good tell he walked up and down the street with his check, Boosting American Fruit Growers. I am doing all that I can do for you all. I hope to have more and more business in the future. We have a few more melons on hand and a bunch of sweet Potatoes coming on I wont to come dowRn and see you as early as possible and will have a full understanding about handling our produce for this season.

"Thanking you Gentlemen for your kindness.

"Yours very Respectfully,

"A. P. CARTER."

"Lodge, S. C., July 31, 1922.

"Dear Mr. Wade:

"I received your checks friday for three cars. Car No. 35670 less expenses $11.89 cts. Car No. 37941 did not cover freight charges and you also taken your commission out of car No. 35565 which has brought about a great deal of dissatisfaction as each of these cars belong to separate men they realize they are responsible for the freight but do not think after losing these whole car load of melons and

a part of the freight that you would take your commission our of his neighbors car load. You haven't received settlement for car loads of melons yet.

Car No. 37768 shipped 7 mont. and 7 day
Car No. 33469
Car No. 39022
Car No. 37486
Car No. 39279
Car No. 35801
Car No. 35657

these last three cars was esspecialy nice melons. If you do not receive good returns for these think it would be best for you to investigate the matter with purchaser of the melons. Please rush this matter as much so as you can. As myself and neighbor are in need of returns.

"Yours very Respectfully,

"A. P. CARTER."

The third exception follows:

"III. In that the charge of the presiding Judge to the jury was insufficient and inadequate."

*Messrs. Moffatt & Hyde,* for appellant, cite: *Exclusion of relevant evidence is error:* 22 C. J., 746. *Practical construction of contracts by conduct:* 13 C. J., 546; 89 S. C., 80; 21 A. & E. Enc. L., 1115; 9 Cyc., 588–9; 105 S. C., 107; 100 S. C., 1; 94 S. C., 388; 81 S. C., 10; 54 S. C., 582; 13 C. J., 767; 6 R. C. L., 852; 2 R. C. L. Supp., 228.

*Mr. R. M. Jefferies,* for respondent, cites: *Exception does not point out error:* Sec. 6, Rule 5 of Sup. Ct.;100 S. C., 43; 95 S. C., 382. *Failure to request to charge:* 115 S. E., 200; 94 S. C., 224. *Charge to be more specific, should have been requested:* 92 S. C., 72.

December 8, 1924.

The opinion of the Court was delivered by MR. JUSTICE COTHRAN.

This is an action to recover the alleged purchase price of 16 carloads of watermelons, alleged to have been sold during the season of 1922 by the plaintiff to the defendant. The complaint contains 16 separate causes of action, each consisting of an alleged sale and purchase of a carload of water- upon all of the causes of action, after the allowance of certain credits by payments on account, is $2,540.90, for which judgment was demanded. The answer is a general denial.

The pivotal question upon the trial of the case was whether the watermelons were shipped by the plaintiff to the defendant upon a contract of sale, or upon consignment to sell as brokers, for the account of the plaintiff; the plaintiff melons at a stipulated price. The total sum alleged to be due contending the former, and the defendant the latter.

The case was tried before his Honor, Judge Henry, and a jury, at Walterboro, October term, 1923, and resulted in a verdict for the plaintiff for the full amount claimed. The defendant has appealed, and by exceptions raises the single question as to the admissibility of certain account sales which were excluded.

It appears that the plaintiff began to ship watermelons to the defendant on July 7, 1922, and between that date and August 18th he shipped at least 18 carloads. The terms of such shipments, as stated, constituted the point of difference between the parties.

Two of the 18 carloads (not included among the 16 carloads upon which the action is based), one shipped on July 21st and the other on July 26th, were satisfactorily settled for by the defendant. Account sales, indicating shipments upon consignment, and showing net proceeds of $90 and $125.00, respectively, with checks to cover, were forwarded to the plaintiff, who admits the receipt of both account sales and the checks. Upon the trial, the defendant offered the account sales covering these two shipments in evidence; but they were excluded by the presiding Judge, upon the ground that they did not cover the shipments upon which the suit was brought.

Account sales of the 16 carloads sued upon were offered in evidence by the defendant, and were admitted over the plaintiff's objection. He emphatically denied that he had ever received any of them, vehemently asserting that he had never recived any account sales other than those covering the two shipments which had been settled for, referred to above, not included in the complaint.

In consideration of the fact that the two shipments of July 21st and July 26th were made between the dates of July 7th and August 18th (the period covered by the plaintiff's transactions with the defendant), taken in connection with the plaintiff's testimony following, the conclusion is irresistible that they were part and parcel of the same general course of dealing, made upon the same basis and under the same agreement. The plaintiff thus testified:

"Q. How many different knds of contracts did you have with the American Fruit Growers during the season of 1922? A. Only one price and only one contract made. * * *

"Q. Except for the differences in the amounts, the agreement was the same, was it not? A. From the time I started with them, that's right. * * *

"Q. They were all, so far as being sales or consignments for sale, they were all on the same contract, were they not? A. Yes, sir.

"Q. If one was a consignment, they all were consignments? A. Yes, sir."

The account sales of the two shipments, as well as those of the 16 shipments sued upon, tended strongly to show that they were made upon consignment, and not upon sale. They showed that the melons were sold "for account of A. P. Carter"; that freight was charged to the shipper; and that broker's commissions of $25.00 per car, with the freight, were deducted from the gross proceeds of sale. If the plaintiff received such account sales, made no objection to them, and accepted the net proceeds indi-

cated, their relevancy and importance as evidence are manifest.

The plaintiff denied that he had ever received a single one of the account sales covering the 16 carloads involved in this suit. The jury, which appears to have believed everything else that the plaintiff testified, doubtless believed this statement, also, and hence, with their acceptance of it as truth, and the exclusion of the Court of the account sales covering the other two shipments, the defendant was deprived of material evidence confirming the manager's statement that the shipments were not delivered upon a contract of sale, but upon consignment.

In view of the admission of the plaintiff that all of the shipments were made upon the same basis, the dealings of the parties extended over the entire period of shipping, and evidence of a party's construction of the relations contemporaneously with those transactions has always been considered as admissible, and of great weight.

The evidence shows that the plaintiff received the excluded account sales, plainly showing consignments, accepted the checks for the net proceeds, and expressed himself delighted with the results. The account sales, taken in connection with the plaintiff's conduct in reference to them, were clearly admissible  In 13 C. J., 546, it is said:

"Where the parties to a contract have given it a practical construction by their conduct as by acts in partial performance, such construction is entitled too great, if not controlling, weight in determining its proper interpretation."

In *Holliday v. Pegram,* 89 S. C., 80; 71 S. E., 370; Ann. Cas. 1913A, 33, it is said:

"Where there is a doubt as to the proper meaning of the contract, the Court may receive evidence of the practical construction which the parties themselves have placed on it as indicated by their acts under it, for it is a canon in the interpretation of contracts that the practice of the parties under them may furnish a solid basis on which their con-

struction may rest, inasmuch as the subsequent acts of the parties in executing a contract may reflect their intention in making it."

In 9 Cyc., 588, it is said:

"Where the parties to a contract have given it a particular construction, such construction will generally be adopted by the Court, in giving effect to its provisions. And the subsequent acts of the parties, showing the construction they have put upon the agreement themselves, are to be looked to by the Court, and in some cases may be controlling."

To the same effect are *Fass v. Atlantic L. Ins. Co.,* 105 S. C., 107; 89 S. E., 558. *Herndon v. Wardlaw,* 100 S. C., 1; 84 S. E., 112. *Miller v. Railway Co.,* 94 S. C., 388; 77 S. E., 1111. *Gibbes v. Johnson,* 81 S. C., 10; 61 S. E., 1027. *Williamson v. Association,* 54 S. C., 582; 32 S. E., 765; 71 Am. St. Rep., 822; 13 C. J., 767; 2 R. C. L. (Supp.), 228.

The admission of these account sales becomes more imperative when taken in connection with the letters of the plaintiff which were admitted in evidence. (The Reporter will include in his report the letters of July 8th, July 26th, and July 31st.) These letters, with the account sales in question, tend to sustain the defendant's contention that the shipments were on consignment. In the letter of July 26th, the plaintiff admits that he had received returns on car 31943, showing net proceeds of $90.00, one of the account sales upon the shipments sued upon, which he denied having received. In addition to this, the circumstances that the plaintiff is not shown ever to have billed the defendant for the alleged purchase price, or to have drawn upon him or to have made any other demand than for the returns upon the shipments, are very significant. The exceptions of the defendant assigning error in the exclusion of the account sales referred to must, therefore, be sustained. The third exception is too general for consideration.

The judgment of this Court is that the judgment of the Circuit Court be reversed, and that the case be remanded to that Court for a new trial.

Messrs. Justices Watts, Fraser and Marion concur.

Mr. Chief Justice Gary did not participate.