## 12014

### CARTER v. AMERICAN FRUIT GROWERS, INC.

#### (134 S. E., 292)

1. SALES.—Evidence *held* to show that shipments of watermelons were as consignments for sale for shipper's account and not as outright sales.

2. EVIDENCE.—In action for purchase price of watermelons, evidence that checks, accompanied by statements that they constituted receipts in full, were cashed under agreement that there would be later settlement, *held* inadmissible as violating parol evidence rule.

3. APPEAL AND ERROR—EVIDENCE.—Testimony that sales were made in vicinity for cash and not as consignments *held* irrelevant to issue whether shipment was consignment or sale and its admission was prejudicial error.

Before WILSON, J., Colleton, spring term, 1925. Reversed and remanded for judgment.

Action by A. P. Carter against the American Fruit Growers, Inc. Judgment for plaintiff, and defendant appeals.

The grounds of motion for directed verdict, directed to be reported, were as follows:

"(1) That it appears from the uncontradicted testimony that the plaintiff in this case begun to ship watermelons to the defendant on July 7, 1922, and between that date and August 2, 1922, the last date alleged in the complaint, he shipped at least 21 carloads. Five of the 21 carloads, not, however, included among the 16 carloads upon which the action is based, shipped, respectively, on July 7th, July 8th, July 12th, July 13th, were satisfactory settled for by the defendant. It will be noted that the five carloads not included in the action were shipped between the dates alleged in the complaint. Account sales indicating shipments upon consignment, and showing net proceeds due to the plaintiff with checks to cover were forwarded to the plaintiff, covering the five cars not embraced in the suit. The plaintiff admits the receipt of some of the account

sales and of all of the checks covering these 5 cars. Chceks were also introduced in evidence covering certain cars embraced in the suit, all of which were payable to the order of the plaintiff and were indorsed by him and charged to the account of the defendant. Attached to all checks were vouchers or statements which show conclusively the cars for which settlement was being made and the fact that the checks constituted the net proceeds realized by the defendant and were forwarded to the plaintiff in full settlement therefor. The statements or vouchers attached to the checks and detached by the plaintiff contained the following statement:

" 'The accompanying check is in full settlement of account stated hereon. If not correct return unaltered.

" 'American Fruit Growers, Inc.'

"On the back of all of the checks accepted by the plaintiff, and immediately above his indorsement, appears the following:

" 'Indorsement of this check constitutes a receipt in full for items listed on statement to be detached and retained by payee.'

"Five letters received by the plaintiff from the defendant under dates of July 3, July 8, July 26, and July 31, 1922, were also introduced into evidence. In the letter of July 26, 1922, the plaintiff admits that he had received returns on car No. 31943, showing net proceeds of $90, one of the account sales upon the shipment sued upon. The plaintiff is not shown ever to have billed, or to have drawn upon defendant, or to have made any other demand than for the returns upon the remainder of the shipment not previously settled for. Account sales of the 16 carloads sued upon were also offered in evidence by the defendant. In view of the testimony of the plaintiff on this and at the former trial of this case that all shipments were made on the same basis, the conclusion is irresistible that all ship-

ments, whether included in the suit or not, were part and parcel of the same general course of dealing and made under the same agreement. The positive testimony of the defendant's witness, who handled these transactions with the plaintiff, is that all of these shipments were made upon consignment, and this testimony is corroborated by the fact that the account sales of the 5 shipments not included in the suit, as well as those of the 16 cars sued upon, conclusively show that the shipments were made upon consignment and not upon sales. They show that the melons were sold 'for account of A. P. Carter,' that freight was charged to the shipper, and that broker's commission of $25 per car, with the freight, were deducted from the proceeds of sale. The testimony is conclusive that the plaintiff received such account sales and made no objection to them, accepted the net proceeds indicated, and executed the release appearing on the checks.

"(2) That this is a case for the construction by the Court of the contract between the parties, particulary in view of the fact that the uncontradicted testimony shows very conclusively that the parties have given the contract a practical construction by their conduct. The practice of the parties affords a solid basis on which the construction of the contracts rests, since the subsequent acts of the parties clearly reflects their intention in making it. The testimony is not conflicting, nor is the contract ambiguous, and there is no question of fact to be submitted to the jury.

"(3) That the testimony is susceptible of but one inference, and but one reasonable conclusion can be drawn from the proof adduced. The evidence adduced by the defendant is of such conclusive character, and so preponderates in its favor that the Court, we submit, in the exercise of a sound judicial discretion, would be compelled to set aside a verdict rendered in opposition to it.

"(4) That in this case the Court is required to hold, as

24—S. C.—136.

a matter of law, that no recovery can be had by the plaintiff under any reasonable view of the evidence. The testimony adduced by the defendant conclusively established a consignment of the various shipments, and the testimony adduced by the plaintiff is so inconclusive that a rational mind cannot draw the conclusion sought to be adduced from it by the plaintiff.

"(5) That the uncontradicted testimony is that the defendant accepted checks in full settlement for the cars covered by the second, ninth, tenth, and eleventh causes of action of the complaint. These checks and the accompanying vouchers or statements show conclusively that the shipments were on consignment, and that the checks were accepted in full settlement. It is axiomatic and admitted that all shipments embraced in the suit were on the same basis, and therefore a consignment of all of the carload covered by the complaint has been clearly established."

*Messrs. Moffatt & Hyde,* for appellant, cite: *Simple receipt variable by parol:* 28 S. C., 224; 5 S. E., 611; 27 S. C., 376; 3 S. E., 776. *Receipt contractual in nature not variable by parol:* 4 S. C., Eq., 60; 127 S. E., 419; 22 C. J., 1138; 22 C. J., 1140. *Unliquidated or dissipated claim:* 195 U. S., 510; 1 R. C. L., 198. *Parol evidence rule:* 117 S. C., 64; 108 S. E., 295. *Proof of accord and satisfaction not proper under plea of payment:* 21 R. C. L., 7. *Payment provable under general denial of debt:* 85 S. C., 419; 67 S. E., 559; 21 R. C. L., 116. *Non-suit proper where there is no evidence as to a material allegation:* 57 S. C., 243; 35 S. E., 489; 33 S. C., 198; 11 S. E., 691. *Newspaper market quotations not competent to prove state of market:* 87 N. C., 367; 47 Am. Rep., 522. *Court will adopt construction of contract given by parties to it:* 125 S. E., 641; 89 S. C., 80; 71 S. E., 367; 54 S. C., 582; 32 S. E., 765. *Appellate Court may reverse judgment based on verdict contrary to the evidence:* 118 S. E., 613;

95 S. E., 178; 109 S. C., 99. *Acceptance of check purporting to be in full for disputed claim amounts to accord and satisfaction:* 61 S. C., 448; 39 S. E., 614; 182 N. C., 20; 108 S. E., 332; 178 P., 577; 4 A. L. R., 471; 34 A. L. R., 1035; 1 C. J., 562. *Duty of reading contract before signing:* 124 S. C., 211; 117 S. E., 351. *Propriety of Court urging jury to agree:* 74 S. C., 102; 54 S. E., 255; 38 Cyc., 1855. *Case distinguished:* 123 S. C., 319; 116 S. E., 273. *Error to refuse new trial where verdict not based on evidence:* 66 S. C., 61; 44 S. E., 380. *Admissibility of evidence of defendant's wealth| where no punitive damages demanded:* 89 S. C., 287; 71 S. E., 481; 152 Ga., 538; 110 S. E., 303; 10 R. C. L., 957; 8 R. C. L., 633; 39 L. R. A. (N. S.), 203, note. *Ledger sheet admissible as original entry in course of business:* 93 S. C., 580; 77 S. E., 706.

*Mr. R. M. Jefferies* for respondent cites: *Any competent evidence tending to prove material allegation admissible:* 13 C. J., 765. *Acts and declarations of parties tending to establish disputed oral contract admissible:* 13 C. J., 767. *In construing contract intention should govern:* 126 S. C., 346; 120 S. E., 64; 13 C. J., 521. *Evidence otherwise inadmissible, admissible as preliminary to relevent inquiry:* 56 S. C., 320; 33 S. E., 750. *What constitutes proof:* 111 S. C., 309; 97 S. E., 843. *Relevancy largely discretionary with trial Court:* 122 S. C., 484; 115 S. E., 815; 121 S. C., 426; 114 S. E., 408; 54 S. C., 314; 32 S. E., 431. *Erroneous admission of evidence cured by instructions:* 13 C. J., 766. *Condition written on check withdrawn before acceptance:* 5 Strob., 126; 151 N. C., 295; 66 S. E., 139; 1 C. J., 560 and 582. *Accord and satisfaction must be supported by consideration:* 49 S. C., L., 318; 30 S. C. L., 111; 1 C. J., 529. *Admissibility of market reports to prove price:* 108 Md., 168; 16 L. R. A. (N. S.), 758; 137 Ga., 608; 73 S. E., 1065; 168 N. C., 281; 84 S. E., 262; 22 C. J., 188; 22 C. J., 929. *Motion*

*for directed verdict properly refused:* 119 S. E., 828; 118 S. E., 614; 117 S. C., 291; 109 S. E., 102; 112 S. C., 7; 99 S. E., 354; 106 S. C., 419; 91 S. E., 324; 106 S. C., 123; 90 S. E., 260; 101 S. C., 249; 85 S. E., 407; 89 S. C., 525; 75 S. E., 964. *Credibility of witnesses for the jury:* 126 S. C., 346; 120 S. E., 64; 126 S. C., 303; 120 S. E., 61; 120 S. C., 7; 112 S. E., 439. *Conflicting testimony as to terms of contract and ambiguities is question for jury:* 126 S. C., 346; 120 S. E., 64; 54 S. C., 314; 32 S. E., 431; 13 C. J., 781 and 787. *Accord and satisfaction is affirmative defense to be pleaded:* 84 S. C., 117; 65 S. E., 989; 108 Ga., 194; 31 S. E., 961; 1 R. C. L., 202; 1 C. J., 573. *Tender of less than total of liquidated claim cannot amount to payment of total:* 85 S. C., 419; 67 S. E., 559; 83 S. C., 78; 64 S. E., 513; 1 R. C. L., 184; 1 C. J., 539. *Propriety of Court urging jury to agree:* 124 S. C., 8; 117 S. E., 305; 123 S. C., 319; 116 S. E., 273. *Matters brought out on direct examination may be pursued on cross examination:* 56 S. C., 320. *Invoices to be delivered to party before they can be construed as evidence against him:* 122 S. C., 43; 114 S. E., 702. *Itemized statements not good as substitute for books of original entry:* 122 S. C., 43; 114 S. E., 702. *Taking of testimony de bene esse:* Code. Civ. Pro., Sec. 722.

June 16, 1926.

The opinion of the Court was rendered by MR. JUSTICE COTHRAN.

Second appeal. 130 S. C., 280; 125 S. E., 641. The action is to recover the alleged purchase price of 16 carloads of watermelons alleged to have been sold during the season of 1922 by the plaintiff to the defendant. The complaint contains 16 separate causes of action, each consisting of an alleged sale and purchase of a carload of watermelons at a stipulated price. The total sum alleged to

be due upon all the causes of action, after the allowance of certain credits by payments on account, is $2,540.90, for which judgment was demanded.

The pivotal question upon the first trial and upon the second was whether the watermelons were shipped by the plaintiff to the defendant upon a contract of sale, or upon consignment to sell as brokers for the account of the plaintiff; the plaintiff contended the former, and the defendant the latter.

The case was first tried before Judge Henry and a jury, and resulted in a verdict for the full amount claimed in favor of the plaintiff. The defendant appealed, and this Court ordered a new trial upon a question of evidence which does not come up again. The second trial was had before Judge Wilson and a jury, and resulted as did the first. The defendant has again appealed.

It appears that the plaintiff began to ship watermelons to the defendant on July 7, 1922, and between that date and August 2, 1922, he shipped 21 carloads, 5 of which were settled for and not included in this action. The terms of such shipments, as stated, constitute the point of difference between the parties.

The plaintiff testified that the shipments were all made in pursuance of a verbal contract, by which the defendant agreed to pay him the price named for each carload described in the complaint, f. o. b. at Lodge, S. C. He had no written evidence of a sale; not a single communication from him to the defendant, or *vice versa*, indicating a sale; no notification to defendant that he was shipping upon a contract of sale; no account rendered by him to the defendant as for a sale; no draft drawn by him upon the defendant for the alleged agreed price; no demand by him upon the defendant for the purchase price; through all of the 21 transactions, between July 7th and August 2d, not the

slightest evidence that either party considered any one of them as a sale.

Notwithstanding the testimony of the plaintiff that the transactions constituted sales, the documentary evidence in the case, which is for the construction of the Court, demonstrates beyond the shadow of a doubt that consignments for the sale of the watermelons for the account of the plaintiff were intended in every instance by both parties. The Court is not unmindful of the distressing disadvantage to which the shippers of produce to foreign markets are subjected in consignments, and is disposed to scrutinize the conduct of consignees in such cases, owing to the unlimited opportunity of oppression; yet this is not such a case. The plaintiff alleges outright sales, and brings his suit for the purchase price. He makes no complaint as to the manner in which the shipments were handled.

In determining the pivotal question in the case, the shipments made by the plaintiff will be taken up in order. It will be noted that shipments numbered 3, 4, 9, 10, and 11 do not appear among the 16 causes of action set up in the complaint; they have been settled for, and settled for upon a consignment basis. Upon the others of the 21, the plaintiff claims $2,700, less credits upon 2, 14, 15, and 16, amounting to $155.10, balance $2,544.90 (placed in the complaint at $2,540.90). The credit allowed on No. 16, $38.93, was really a debit, and should have been added to the $2,544.90, if the plaintiff be entitled to anything.

The first shipment (cause of action No. 1), was in car No. 37768 on July 7th. On July 29th the defendant furnished the plaintiff with an account sales showing a sale "for account of" the plaintiff, of the carload, for $50, the purchaser paying the freight. Commissions of $25 were charged, and the net proceeds, $25, passed to the credit of the plaintiff.

Evidently referring to this shipment, the plaintiff wrote to the defendant, "Please place them for me." No objection appears to have been entered by the plaintiff to the inevitable construction which needs have been placed upon the account sales. They could have meant nothing but consignments. See shipment No. 17, where the plaintiff was given credit for this $25.

The second shipment (cause of action No. 2) was in car No. 24351, on July 7th. On July 15th the defendant furnished the plaintiff with an account sales showing a sale "for account of" the plaintiff, of the carload, for $175. After deducting freight charges and commissions, the net proceeds were shown to be $14.28, which were passed to the credit of the plaintiff. On July 21st, the defendant mailed to the plaintiff a check for $14.28. Attached to the check was a statement of the net proceeds of the sale of that particular car, $14.28. Upon the back of that check was:

"Indorsement of this check constitutes a receipt in full for items listed on statement to be detached and retained by payee."

The check was received, indorsed by the plaintiff and cashed without objection.

The third shipment, not included in the 16 causes of action, was in car No. 39941, on July 7th. On July 21st the defendant furnished the plaintiff with an account sales, showing a sale "for account of" the plaintiff, of the carload, for $75, the purchaser evidently paying the freight. After deducting commissions of $25, the net proceeds were shown to be $50, which were passed to the credit of the plaintiff. On July 21st, the defendant mailed to the plaintiff a check for $50. Attached to the check was a statement of the net proceeds of that particular car, $50. Upon the back of the check was the same memorandum as stated above.

The check was received, indorsed by the plaintiff, and cashed without objection.

The fourth shipment, not included in the 16 causes of action, was in the car No. 42916, on July 8th. On July 21st the defendant furnished the plaintiff with an account sales, showing a sale "for account of" the plaintiff, of the carload, for $115, the purchaser evidently paying the freight. After deducting commissions, $25, the net proceeds were shown to be $90, which were passed to the credit of the plaintiff. On July 21st, the defendant mailed to the plaintiff a check for $90. Attached to the check was a statement of the net proceeds of that particular car, $90. Upon the back of the check was the same memorandum as stated above. The check was received, indorsed by the plaintiff, and cashed without objection.

On July 8th, the plaintiff after having made the fourth shipment, wrote to the defendant that he would have seven or eight cars for the following week and said:

"I hope that you gentlemen will be able to handle all my melons to a great advantage to me; it will be highly appreciated. When sending returns for those melons to me, please send me a bill of each car,"

—a statement utterly inconsistent with the idea that he was selling to the defendant.

The fifth shipment (cause of action No. 3) was in car No. 35657, on July 11th. On July 31st, the defendant furnished the plaintiff with an account sales, showing a sale "for account of" the plaintiff, of the carload, for $300. After deducting freight and commissions, the net proceeds were shown to be $103.65, which were passed to the credit of the plaintiff, as appears from the statement referred to in explanation below of shipment No. 17.

The eight shipment (cause of action No. 6) was in car No. 35801, on July 11th. On July 31st, the defendant furnished the plaintiff with an account sales, showing a

sale "for account of" the plaintiff, of the carload, for $150. After applying the proceeds of the sale to the freight and commissions, the loss was shown to be $28.92, which was entered as a charge against the plaintiff.   See shipment No. 17.

The seventh shipment (cause of action No. 5) was in car No. 33469 on July 12th.   On August 16th, the defendant furnished the plaintiff with account sales, showing a sale "for account of" the plaintiff, of the carload, for the freight charges.

The eighth shipment (cause of action No. 6) was in car No. 39022, on July 12th.   On August 3d, the defendant furnished the plaintiff with an account sales, showing a sale "for account of" the plaintiff, of the carload, for the freight charges.

The ninth shipment, not included in the 16 causes of action, was in car No. 22594, on July 12th.   On July 21st, the defendant furnished the plaintiff with an account sales, showing a sale "for account of" the plaintiff, of the carload, for $70, the purchaser evidently paying the freight. After deducting commissions, $25, the net proceeds were shown to be $45, which were passed to the credit of the plaintiff.   On July 21st, the defendant mailed to the plaintiff a check for $45.   Attached to the check was a statement of the net proceeds of that particular car, $45.   Upon the back of the check was the same memorandum as stated above. The check was received, indorsed by the plaintiff, and cashed without objection.

The tenth shipment, not included in the 16 causes of action, was in car No. 36877, on July 12th.   On July 24th, the defendant furnished the plaintiff with an account sales, showing a sale "for account of" the plaintiff, of the carload, for $215.   After deducting freight and commissions, the net proceeds were shown to be $44.92, which were passed to the credit of the plaintiff.   On July 24th, the defendant

mailed to the plaintiff a check for $44.92. Attached to the check was a statement of the net proceeds of that particular car, $44.92. Upon the back of the check was the same memorandum as stated above. The check was received, indorsed by the plaintiff, and cashed without objection.

The eleventh shipment, not included in the 16 causes of action, was in car No. 35565, on July 13th. On July 26th the defendant furnished the plaintiff with an account sale, showing a sale "for account of" the plaintiff, of the carload, for $150, the purchaser evidently paying the freight. After deducting commissions, $25, the net proceeds were shown to be $125, which were passed to the credit of the plaintiff. On August 16th the defendant mailed to the plaintiff a check for $97.96. Attached to the check was a statement showing:

Net proceeds on eleventh shipment.... $125.00
Net proceeds on fifteenth shipment.   11.89   $136.89
                                              _____

Loss on sixteenth shipment...............        38.93
                                              _____

   Net balance .......................        $97.96
                                              _____

Upon the back of the check was the same memorandum as stated above. The check was received, indorsed by the plaintiff, an cashed without objection.

The twelfth shipment (cause of action No. 7) was in car No. 27486 on July 13th. On August 16th, the defendant furnished the plaintiff with an account sales, showing a sale "for account of" the plaintiff, of the carload, for $162. After deducting the proceeds from the freight and commissions, the loss was shown to be $31.75, which was charged to the plaintiff. See shipment No. 17.

The thirteenth shipment (cause of action No. 8) was in car No. 22733, on July 13th. On August 5th the defendant furnished the plaintiff with an account sales, showing a sale

"for account of" the plaintiff, of the carload for $125. After deducting from the proceeds the freight and commissions, the loss was shown to be $45.48, which was charged to the plaintiff.  See shipment No. 17.

The fourteenth shipment (cause of action No. 9) was in car No. 31943, on July 13th.  On July 24th the defendant furnished the plaintiff with an account sales, showing a sale "for account of" the plaintiff, of the carload, for $115, evidently the freight having been paid by the purchaser. After deducting the commissions, $25, the net proceeds were shown to be $90, which were passed to the credit of the plaintiff.  On July 24th, the defendant mailed to the plaintiff a check for $90.  Attached to the check was a statement of the net proceeds of that particular car, $90.  Upon the back of the check was the same memorandum as stated above.  The check was received, indorsed by the plaintiff, and cashed without objection.  The plaintiff admitted upon the stand that this shipment was a consignment; he testified that all of the shipments were made upon the same basis.

The fifteenth shipment (cause of action No. 10) was in car No. 35670, on July 13th.  On July 26th the defendant furnished the plaintiff with an account sales, showing a sale "for account of" the plaintiff, of the carload, for $190. After deducting the freight and commissions, the net proceeds were shown to be $11.89, which were passed to the credit of the plaintiff.  On July 27th the defendant mailed a check to the plaintiff for $97.96.  Attached to the check was a statement showing:

Net proceeds of eleventh shipment......$125.00
Net proceeds of fifteenth shipment.....  11.89  $136.89

Loss on sixteenth shipment.................  38.93

   Net balance ..........................  $97.96
   (See eleventh shipment.)

Upon the back of this check was the same memorandum as stated above. The check was received, indorsed by the plaintiff, and cashed without objection.

The sixteenth shipment (cause of action No. 11) was in car No. 37941, on July 15th. On July 26th the defendant furnished the plaintiff with an account sales, showing a sale "for account of" the plaintiff, of the carload, for $150. After deducting the proceeds of the sale from the freight and commissions, there was shown a loss of $38.93, which was charged to the plaintiff. On July 27th, the defendant mailed a check to the plaintiff for $97.96. Attached to the check was the statement set out in the discussion of the eleventh and fifteenth shipments, showing that the loss on the sixteenth shipment had been deducted from the net proceeds on the eleventh and fifteenth shipments. The check, as stated, had the memorandum upon it, and was received, indorsed, and cashed by the plaintiff without objection.

The seventeenth shipment (cause of action No. 12) was in car No. 29279, on July 13th. On August 5th the defendant furnished the plaintiff with an account sales, showing a sale "for account of" the plaintiff, of the carload, for $275. After deducting the freight and commissions, the net proceeds were shown to be $20.71. On August 16th the defendant mailed to the plaintiff a check for $93.68. Attached to the check was a statement showing:

| | | |
|---|---|---|
| Net proceeds first shipment | $ 25.00 | |
| Net proceeds fifth shipment | 103.65 | |
| Net proceeds seventeenth shipment | 20.71 | |
| Net proceeds eighteenth shipment | 37.74 | |
| Net proceeds twentieth shipment | 16.59 | |
| Net proceeds twenty-first shipment | 45.60 | $249.29 |

Loss on sixth shipment..............$ 28.92
Loss on twelfth shipment............   31.75
Loss on thirteenth shipment.........   45.48
Loss on nineteenth shipment.........   49.46 $ 155.61

Net balance ............................$ 93.68

This check, though received by the plaintiff, was not indorsed and cashed.

The eighteenth shipment (cause of action No. 13) was in car No. 23840, on July 19th. On July 31st the defendant furnished the plaintiff with an account sales, showing a sale "for account of" the plaintiff, of the carload, for $200. After the deduction of freight and commissions, the net proceeds were shown to be $37.74. On August 16th the defendant mailed to the plaintiff a check for $93.68. Attached to the check was a statement (see statement set forth in the discussion of the seventeenth shipment) which shows that the item of $37.74, net proceeds, was entered as a debit item against the defendant. This check, as stated, was not used by the plaintiff. See shipment No. 17.

The nineteenth shipment (cause of action No. 14) was in car No. 18626, on July 21st. On August 2d the defendant furnished the plaintiff with an account sales, showing a sale "for account of" the plaintiff, of the carload, for $75. After deducting from the freight and commissions the proceeds of sale, a loss was shown of $49.46. By reference to the statement, set forth under the seventeenth shipment it will be seen that this item of loss was entered as a credit item in favor of the defendant, in striking the balance of $93.68, the amount of the check mailed on August 16th.

The twentieth shipment (cause of action No. 15) was in car No. 36546, on July 21st. On August 16th the defendant furnished the plaintiff with an account sales showing a sale "for account of" the plaintiff, of the car-

load, for $165.   After deducting the freight and commissions, the net proceeds were shown to be $16.89.   By reference to the statement set forth under the seventeenth shipment, it will be seen that this item of net proceeds was entered as a debit item against the defendant in striking the balance of $93.68, the amount of the check mailed to the plaintiff on August 16th.   See shipment No. 17.

The twenty-first shipment (cause of action No. 16) was in car No. 33509, on August 2d.   On August 16th the defendant furnished the plaintiff with an account sales, showing a sale "for account of" the plaintiff, of the carload, for $175.   After deducting freight and commissions, the net proceeds were shown to be $45.60.   By reference to the statement set forth under the seventeenth shipment, it will be seen that this item was entered as a debit item against the defendant, in striking the balance of $93.68, the amount of the check mailed to the plaintiff on August 16th.   See shipment No. 17.

On the 26th of July, after all the shipments except the twenty-first had been made, the plaintiff wrote to the defendant:

"I am receiving return (returns?) from my cars from time to time, and I think that you all have done fine, for the melons that you have sent me returns for."

—showing indisputably that "returns," which could only come from consignments, had been constantly received by the plaintiff, and that they were satisfactory.   Every return, as shown by the documentary evidence, represented a sale by the defendant "for account of" the plaintiff, and could not possibly have been evidence of a sale to the defendant by the plaintiff.

On the 31st of July, the plaintiff acknowledged the receipt of the check for $97.96, which was the balance due him after crediting him with $125 on shipment No. 11 and $11.89 on shipment No. 15 and charging him with loss

$38.93 on shipment No. 16.   See statement under shipment No. 11.   He acquiesced in the settlement of shipment No. 15, by which, after deducting freight and commissions, he was entitled to a credit of $11.89, and in the settlement of shipment No. 16, in which he is debited with a loss of $38.93, but complains that the defendant's commissions were taken out of the proceeds of shipment No. 11, which belonged to another party than the one who owned shipment No. 16, upon which there was a loss.   The statement accompanying that check was clearly based upon the theory of a consignment and not a sale.   That is sustained by the remainder of his letter, in which he states that returns had not been received for certain other cars named.   He says:

"These last three cars were especially nice melons.   If you do not receive good returns for these, think it would be best for you to investigate the matter with the purchaser of the melons.   Please rush this matter as much as you can, as myself and neighbors are in need of returns."

Not a suggestion in this letter or elsewhere that the defendant had bought his melons.   He acknowledges that the shippers were to pay the freight, which is entirely inconsistent with his claim that there was a sale for so much, f. o. b. Lodge, S. C.   See this letter reproduced in the report of the former appeal.

The defendant's principal place of business was in Pittsburgh, Pa.; they had a branch office in Charleston; the melons were shipped to Potomac Yards, Va.   It is incredible that the representative in Charleston, with whom alone the plaintiff dealt, would have purchased the plaintiff's melons at Lodge, S. C., without ever seeing and examining them.   It is entirely reasonable that they were under these circumstances shipped on consignment, as every circumstance in the case indicates.

It is significant that, in the only personal interview which the plaintiff claims to have had with the representative of

the defendant, on August 18th, not a word was said by him in reference to a demand upon the defendant for the purchase price of the shipments.

Although the plaintiff claims that the defendant purchased his carloads of melons f. o. b. Lodge, S. C., time after time he received account sales showing that the defendant had deducted both freight charges and commissions, without the slightest protest on his part; an attitude absolutely inconsistent with the theory of a purchase.

From the foregoing it is clear that the defendant's motion for a directed verdict upon the causes of action set forth in the complaint should have been granted, without prejudice to the rights of the plaintiff to recover in another action upon the unpaid checks of August 16, 1922, for $93.68 and of August 18, 1922, for $25. (The reporter will incorporate in the report of the case the grounds of the motion for a directed verdict found at folio 631 of the "case.")

There are some other matters of interest which may be adverted to, in the event that a majority of the Court should not agree in the conclusion that a directed verdict should have been ordered.

The plaintiff was allowed, over the objection of the defendant's attorneys, to testify that he did not receive, indorse, and cash the checks referred to in the discussion of shipments 2, 3, 4, 5, 9, 10, 11, 14, 15, and 16, in payment of his claims against the defendant, but that it was agreed between him and the representative in Charleston that he should cash the checks, and that the defendant would settle with him for the shipments which it had bought from him. The testimony was inadmissible, and upon objection should have been excluded. The general rule is thus stated in 1 R. C. L., 196:

"When a claim is in dispute, and the debtor sends to his creditor a check or other remittance which he clearly

states is in full payment of the claim, and the creditor accepts the remittance or collects without objection, it is generally recognized that this will constitute a good accord and satisfaction."

It is equally true, as stated in 1 C. J., 560:

"Although the debtor has made his tender conditional on acceptance in full satisfaction of a larger disputed claim, he may nevertheless waive the condition and consent to the creditor receiving on his own terms, and when he does so, acceptance of the amount tendered does not operate as a satisfaction of the claim."

But this latter rule has no application to a case like the present, where the check is accompanied by a statement, based upon an account sales rendered, which is based upon the relation of consignor and consignee and not of seller and purchaser. The contest between the parties is whether a consignment for the account of the plaintiff was consummated or a sale by the plaintiff to the defendant. The whole transaction of the account sales, the check, and the subjoined statement speak only of a consignment, and, to allow the creditor to dispute what he has acknowledged by accepting the check, indorsing it and cashing it, would violate the well-established rule that parol evidence may not be permitted to vary the terms of a written instrument.

Take a single instance as an example (and they are numerous as has been seen above): The fourteenth shipment (cause of action No. 9). The defendant sold the carload, and on July 24th mailed an account sales showing that a sale "for the account of" the plaintiff had been made of the carload, at $155; that, after deducting the commissions, the net proceeds were $90. On the same day the defendant mailed a check to the plaintiff for $90. Attached to the check was a statement of the net proceeds, $90. Upon the back of the check was the memorandum which has so frequently been referred to. The check was received,

indorsed, and cashed by the plaintiff without objection. Shall the plaintiff now be allowed to testify that he did not accept that check as payment, based as it was upon a consignment, but that there was an oral agreement that the transaction was not what it purported in writing to be, but something entirely different, a sale? We do not think so.

In *Harris v. Dinkins,* 4 Desaus., S. C., 60, it was held that parol evidence was inadmissible to show that a receipt given to an administrator by heirs and distributees of an estate for their distributive shares extended to the real estate of the deceased, as the meaning and operation of the receipt could not be changed by parol testimony.

In *Johnson v. Johnson,* 74 Miss., 549; 21 So., 147, the Court holds (quoting syllabus) :

"A receipt signed by the vendor of lands, acknowledging the payment of money by the vendee, 'to be placed to his land credit, and balance to account,' is a contract for the application of the payment, which cannot be varied by parol."

In *Tuley v. Barton,* 79 Va., 387, the Court says (quoting syllabus) :

"Receipts are either mere admissions of payments or delivery, or they may contain a contract to do something in relation to the thing delivered. So far as they are mere admissions of delivery, they are only *prima facie,* and may be contradicted by parol testimony, but, so far as they are evidence of a contract, they stand on the footing of other written contracts."

In *Holcomb Lobb Co. v. Kaufman* (Ky.), 96 S. W., 813, the Court says (quoting syllabus) :

"Where a receipt showed on its face what it was for, the Court properly refused to permit the maker to testify that it was given for a purpose other than that stated therein."

A receipt, stating that the signer has received a certain note "for collection," is with respect to such recital a con-

tract which cannot be varied by parol. *Foulks v. Falls,* 91 Ind., 315. *Langdon v. Langdon,* 4 Gray (Mass.), 186. *Wood v. Whiting,* 21 Barb. (N. Y.), 190.

In *Tisloe v. Groeter,* 1 Blackf. (Ind), 352, the Court holds (quoting syllabus) :

"In an action of assumpsit on an instrument which recites that the defendant received a sum of money for safe-keeping, parol evidence that it was not received for safe-keeping, but was paid in discharge of a debt, is inadmissible."

In *Alexander v. Meredith* (Tex. Civ. App.), 262 S. W., the Court holds (quoting syllabus) :    .

"Parol evidence was inadmissible, in the absence of fraud, to vary a writing acknowledging receipt of money in payment of rentals on oil and gas lease up to a specified date by showing the payment was for a different purpose."

In *Eggimann v. Houck* (Mo. App.), 240 S. W., 478, the Court holds (quoting syllabus) :

"An instrument acknowledging the receipt of government bonds and a certificate of deposit, and stating that they were to be held as collateral for certain notes, * * * was more than a mere receipt, and evidenced a contract, * * * and to that extent could not be varied, contradicted, or enlarged by parol evidence."

Another matter: The testimony of witnesses, received over the objection of the defendant, to the effect that sales were being made in the vicinity f. o. b. the cars there, for cash and not consignment, was clearly inadmissible as *res inter alios acta,* and exceedingly hurtful to the defendant in the mind of the average jury. It was entirely irrelevant to the issue of a consignment or a sale, and its admission was reversible error. If a hundred men had made sales for cash, it was no reason or evidence why the plaintiff had not made a consignment. *Buist & Co. v. Lancaster Co.,* 73 S. C., 48; 52 S. E., 789. *Burwell*

*v. Chapman,* 59 S. C., 581; 38 S. E., 222. *Perry v. Jefferies,* 61 S. C., 292; 39 S. E., 515. *Burns v. Goddard,* 72 S. C., 355; 51 S. E., 915.

The judgment of this Court is that the judgment of the circuit Court be reversed, and that the case be remanded to that Court for the entry of judgment in favor of the defendant under rule 27.

MESSRS. JUSTICES WATTS and STABLER concur.

MESSRS. CHIEF JUSTICE GARY and JUSTICE BLEASE dissent.