16161

MOODY v. STEM *ET AL.*

(51 S. E. (2d) 163)

*Messrs. Mozingo & Watts and C. R. Parrott,* of Darling-
ton, *for Appellant,*

*Messrs. Dargan, Paulling & James and Samuel Want, James S. Verner, Sam Rogol and LeRoy M. Want,* all of Darlington, *for respondents,*

December. 30, 1948.

BAKER, Chief Justice.

The appellant, plaintiff in the Circuit Court, alleges in his complaint that he deposited several piles of tobacco on the floor of the tobacco auction warehouse operated by the respondents, to be sold (presumably) according to the usual practice of tobacco auction markets, and that the auction fees charged to and collected from the appellant on each of two of the piles of tobacco exceeded by twenty-five cents the fees permitted by the statute prescribing the charges to be made by tobacco warehousemen. See Code 1942, Sec. 7197. On the basis of this overcharge, the appellant asks damages, "actual and punitive", in the amount of $3,000.00.

The total actual loss or damage sustained by the appellant being clearly defined in the complaint as limited to fifty cents, the appellant expanded the statement of his cause of action by alleging that the respondents overcharged him *"willfully, wantonly, deliberately and unlawfully, as they have habitually done"*; that the respondents *"thereby willfully, wantonly, deliberately and unlawfully"* overcharged the appellant fifty cents; *"that said overcharge has been habitually practiced"* by the respondents; and that the overcharge was made *"as a part of a plan and scheme to cheat and defraud plaintiff*

*and the other customers"* of respondents. And it is alleged that *"because of the willful, wanton, deliberate and unlawful acts of the defendants as herein set forth, plaintiff has been damaged in the sum of Three thousand ($3,000.00) Dollars actual and punitive damages."*

The matter before this Court is an appeal from an order of the lower court granting respondents' motion to strike from the complaint the above quoted and emphasized allegations of the complaint on the ground that the same are irrelevant and redundant, and are not supported by any *facts* alleged in the complaint, and permitting the appellant to amend his complaint by setting forth a cause of action to recover actual damages in the amount of 50 cents.

A number of other similar suits now pending are, by stipulation of counsel, to be controlled by the decision on the present appeal. On this subject, the Transcript of Record contains the following : "The present action is one of twenty-eight similar actions by various plaintiffs against the same respondents, pending in the same court, and in all of which the counsel for the parties in the present action are also counsel for the respective plaintiffs and defendants in the remaining actions. The total amount of actual damages alleged in the twenty-eight actions is Sixteen and 25/100 ($16.25) Dollars, and the total amount of damages claimed as 'actual and punitive damages' is Eighty-four Thousand ($84,000-.00) Dollars. It has been agreed among counsel that the decision in the present cause shall be deemed controlling in each of the other cases.":

The Code section above cited, 7197, and which is the foundation of appellant's cause of action, reads as follows: "The charges and expenses of handling and selling leaf tobacco upon the floor of tobacco warehouses in this State shall not exceed the following schedule of prices, to-wit : *for auction fees fifteen (15) cents on all piles of one hundred pounds or less, and twenty-five (25) cents on all piles over one hundred (100) pounds.* For weighing and handling, ten (10)

cents per pile for all piles of less than one hundred (100) pounds and ten cents for each additional one hundred (100) pounds; for commission on the gross sales of leaf tobacco in said warehouses not to exceed two and one-half per centum. The proprietor of each and every warehouse shall render to each seller of tobacco at his warehouse a bill, plainly stating the amount charged for weighing and handling, the amounts charged for auction fees and the commission charged on such sale; and it shall be unlawful for any other charges or fees exceeding those herein named to be made or accepted." (Emphasis added.)

No penalties are provided for violation of this Act. See *State ex rel. Moody v. Stem et al.*, S. C., 50 S. E. (2d) 175.

Aside from the legal principles that govern the disposition of this appeal, the absence from the complaint of certain factual matter is worth noting.

Why did the appellant pay the excess charges? He does not allege that any representations were made to him by the respondents; or that he was coerced; or that there was an element of duress in the fact that he would have suffered some loss or disadvantage if he had carried his tobacco to some other warehouse; or that other warehouses charged lower fees and in accord with the governing statute; or that he objected to the overcharge. The only reasonable inference from the complaint is that at the time of the transaction in question, the appellant did not know that the charge of auction fees to which he objects in this case exceeded the statutory rates, in consequence of which he acquiesced in such charge as a voluntary payment founded upon his ignorance of the law.

Equally noticeable is the failure of the appellant to allege that the respondents made the overcharge with knowledge at the time that they were violating the law. It is difficult to avoid the inference that the respondents were likewise ignorant of the law in receiving and accepting (by way of de-

duction from appellant's sales ticket) the amount of the overcharges.

Even more significant, is the absence from the complaint of any allegation that appellant demanded, before instituting his suit, the refund of the amount of the overcharge. Assuming, without deciding, that it is unnecessary in a case of this character to allege demand and refusal of the demand, and it may be taken to be a reasonable inference that had such a demand been made (or even the attention of the respondents directed to the governing statute), the respondents would have complied with it by promptly refunding the amount of the overcharge, and thereby have negatived any fraudulent or conscious violation of law; or, to state the matter another way, if such demand had been made and refused, or if the matter had been called to the attention of respondents and they took no action thereabout, there would have been created some foundation for the characterization of respondents' conduct as willful, wanton, and deliberate, as well as unlawful.

It is unnecessary to consider whether these matters of fact, absent from the case attempted to be stated in the complaint, have *controlling* legal force. If it be conceded (without so holding) that they haven't, they still bear upon the question whether the disposition of this case made in the Circuit Court deprives the appellant of full redress for the breach by respondents of their implied contractual obligation and their legal duty to limit their charges to the rates provided by law.

Proceeding to a consideration of the legal questions before us, it may be observed that money voluntarily paid is not recoverable, even though the payment was illegally exacted. Applied to the present case, that principle prevents the recovery of actual damages; certainly, then, punitive damages are not recoverable.

The general principle was well stated in the case of *Kenneth & Gibson v. South Carolina R. Co.,* 15 Rich. 284, 98

Am. Dec. 382, where the plaintiff attempted to recover excess freight charges illegally exacted from and paid by him: "But where one man *voluntarily* pays money to another, it cannot be *against conscience and right,* that the receiver should retain it. An intelligent assent to its receipt by the payee as his own ought to estop the claim of the payer to have it restored. That cannot be said with propriety to be voluntarily done, where a formal assent thereto is induced by *mistake,* or procured by fraud or deception, as to facts material to control the operation of the will therein, any more than where such formal assent is extorted by the application of a *force* which fetters and obstructs its free working. 'I think,' says *Gibbs, J.,* in *Brisbane v. Dacres* (5 Taunt. 143), 'that when a man demands money of another as of right, and that other, with a full knowledge of the facts upon which the demand is founded, has paid a sum, he never can recover back the sum he has voluntarily paid.' 'I think that by submitting to the demand he that pays the money, gives it to the person to whom he pays it, and makes it his and closes the transaction. He that receives it has a right to consider it his without dispute; he spends it in the confidence that it is his, and it would be most mischievous and unjust, if he, who has acquiesced in the right by such voluntary payment, should be at liberty, at any time within the statute of limitations, to rip up the matter and recover back the money. He who received it is not in the same condition. He has spent it in the confidence that it was his, and perhaps has no means of repayment.' "

For other illustrations of the application of the doctrine that voluntary payments are not recoverable, see *Robinson v. City Council of Charleston,* 2 Rich. 317, 45 Am. Dec. 739; *City of Columbia v. Peurifoy, Receiver,* 148 S. C. 349, 146 S. E. 93; *Turner v. Washington Realty Co.,* 128 S. C. 271, 122 S. E. 768; *Shockley v. Wickliffe et al.,* 150 S. C. 476, 148 S. E. 476.

Nor does the fact that an attempted statement of a cause of action is founded upon a violation of law create a liability for damages where none otherwise exists. *Williams v. Atlantic Coast Lumber Corp.*, 136 S. C. 423, 134 S. E. 390.

In the case of *Robinson v. City Council of Charleston*, 2 Rich. 317, 45 Am. Dec. 739, the defendant municipality exacted and collected from the plaintiff over a period of years an illegal license charge. In this suit to recover the amount illegally collected from the plaintiff, this Court said:

"* * * There was no disguise, by that body, of the grounds on which it claimed from the plaintiff, and other non-residents, extra sums for badges. The plaintiff, also, had every opportunity of informing himself as to the law, and was under no coercion to abide by the ordinance under which he paid his money. He either paid it with a knowledge of the law on the subject, or in ignorance of it. In either point of view, the payment was voluntary. If he knew that the tax was illegal, he must be regarded as having waived all exceptions when he paid it, and is like one who has paid his money by voluntarily submitting to extortion, rather than take the pains or trouble to resist it. * * *"

Since we do not have before us a demurrer to the complaint, the authorities above cited do not prevent the maintenance of the present action as one *ex contractu*, to recover the actual loss shown by the factual allegations of the complaint; but since the authorities cited deny the recovery of even actual damages, they are at least apposite on the question of the recovery of punitive damages.

It is a well settled principle that ordinarily punitive damages are not recoverable in an action *ex contractu*, but that where the plaintiff alleges *facts* disclosing an element of tort into the case, then in certain classes of cases such damages are recoverable.

Thus, if the *facts* surrounding the making of a contract involve fraud and deceit, punitive as well as actual damages

may be claimed. This character of action is familiar in South Carolina. It is illustrated by the case of *Flowers v. Price*, 190 S. C. 392, 3 S. E. (2d) 38, wherein it is shown that to state such a cause of action, nine distinct factors must be alleged, as follows: "(1) a representation; (2) its falsity; (3) its materiality; (4) the speaker's knowledge of its falsity; (5) his intent that it should be acted upon by the person; (6) the hearer's ignorance of its falsity; (7) his reliance on its truth; (8) his right to rely thereon; (9) and his consequent and proximate injury."

See also *Culbreath v. Investors Syndicate*, 203 S. C. 213, 26 S. E. (2d) 809, 147 A. L. R. 1144.

Obviously, the complaint in the present case does not measure up to the rule stated. It is lacking any allegations showing more than the simple fact that the plaintiff was overcharged on the sale of two piles of tobacco, and that having yielded to the overcharge, he is suing to recover the same and to collect punitive damages.

Another character of action founded upon contract, but in which punitive damages are recoverable, is the action for breach of contract accompanied by a fraudulent act. Numerous decisions of this Court are to the effect that where a contract is breached, and the breach is accompanied by a fraudulent act apart from the breach itself, punitive damages are recoverable. Cases illustrating the inapplicability of this principle to the facts of the present case include *Cooksey v. Beaumont Mfg. Co.*, 194 S. C. 395, 9 S. E. (2d) 790; *Branham v. Wilson Motor Co.*, 188 S. C. 1, 198 S. E. 417; *Williams v. Metropolitan Life Ins. Co.*, 173 S. C. 448, 176 S. E. 340; *Ray v. Pilgrim Health & Life Ins. Co.*, 206 S. C. 344, 34 S. E. (2d) 218.

And where there is no factual showing of a fraudulent act accompanying the breach, the distortion of the facts showing the breach by characterizing the action as one for conversion of the money wrongfully received and held by the defendant

cannot convert what in fact is a suit *ex contractu* into a suit for tort, in which punitive damages may be recovered. See *Holland v. Spartanburg Herald-Journal Co.*, 166 S. C. 454, 165 S. E. 203, 84 A. L. R. 1336; *Ray v. Pilgrim Health & Life Ins. Co., supra.*

In the case of *Ray v. Pilgrim Health & Life Ins. Co., supra,* the action was for $1,000.00 actual and punitive damages alleged to have been sustained by the plaintiff by reason of the "fraudulent conversion by appellant of the sum of Five ($5.00) Dollars which respondent paid to the appellant to be credited on a premium on a life insurance policy." The application was withdrawn before the policy was issued, and the appellant alleged that she had demanded the refund of the $5.00 paid by her.

Reversing an award of punitive damages made in the Circuit Court, this Court said [206 S. C. 344, 34 S. E. (2d) 219] : "If the action be viewed as one for fraudulent breach of contract, we do not see how such a construction could be of any aid to the respondent in her effort to recover punitive damages. It is well established in this State that in order to recover punitive damages for breach of contract, it must be shown that the breach 'was accomplished with a fraudulent intention, and was accompanied by a fraudulent act.' *Williams v. Metropolitan Life Insurance Co.*, 173 S. C. 448, 176 S. E. 340, 345, and many other cases too numerous to be cited. There is no evidence in this case of fraud or fraudulent acts on the part of the appellant."

In the present case the complaint alleges a breach of contract, but alleges no fraudulent act accompanying the breach.

In the case of *Branham v. Wilson Motor Co., supra,* the plaintiff alleged that he bought a car from the defendant under an agreement by the defendant to insure the car against damage from collision, $50.00 deductible; that the defendant collected an insurance premium from the plaintiff for such alleged purpose, but had no intention to, and did not in fact

procure such insurance. It was then alleged that the car was damaged, and that by reason of the non-existence of the insurance the plaintiff was damaged. The defendant's acts were described in the complaint as "willful, wanton, fraudulent, malicious, unlawful and immoral." Actual and punitive damages were demanded.

A motion to strike the allegations relating to punitive damages was held by this Court to have been properly granted. As the opinion states [188 S. C. 1, 198 S. E. 418]:

"In all of the decided cases in this State on this subject the underlying principle of law is that there must be proof of some fraudulent act, other than the mere receiving of the money, either in the inception of the contract or in its non-fulfillment and fraudulent breach. For example, in a case where, after the contract was entered into to work a crop on halves, and after the cropper had been induced to labor to make it, he was run off the premises by the landlord, who gathered the crop, and refused to settle with the cropper, it is clear that the subsequent taking of the crop was a fraudulent act accompanying the breach with fraudulent intent to cheat and defraud. *Sullivan v. Calhoun,* 117 S. C. 137, 108 S. E. 189; *Ford v. Ball,* 178 S. C. 111, 182 S. E. 319. * * *

"The distinction between the right to recover only actual damages based upon a breach of contract, even though it was breached with fraudulent intent, and the right to recover punitive damages for such a fraudulent breach, rests upon the well established and often repeated precept that there must be a fraudulent act accompanying the breach, with fraudulent intent in order to sustain a claim for punitive damages."

Appellant takes the position that liability for punitive damages can be predicated upon the bare fact that the breach of contract in this case constituted a violation of law. But this Court has held otherwise. See, for example, *Robinson v. Charleston, supra; Kenneth v. South Carolina Railroad*

*Co., supra; Williams v. Atlantic Coast Lumber Corp., supra;* and *Cooksey v. Beaumont Mfg. Co., supra.*

The further position of appellant that a breach of contract furnishes a basis for the recovery of punitive damages where the complaint describes the transaction as fraudulent, or as involving a scheme to defraud, is untenable. It is not the characterization of the defendant's conduct that labels the action as one involving a tort, but the *facts* alleged by the plaintiff.

Where the factual allegations of the complaint do not disclose the existence of legal fraud in addition to the breach of contract, the charge of fraud is of no avail to the plaintiff, and will be stricken out on motion. *Lilienthal v. South Carolina Public Service Co.,* 174 S. C. 177, 177 S. E. 98; *Branham v. Wilson Motor Co., supra.*

The contention that liability of the respondent for punitive damages can be deduced from the fact that the respondent "converted" the amount of the overcharge, and "appropriated" the same, is answered by the cases of *Ray v. Pilgrim Health & Life Ins. Co., supra,* and *Holland v. Spartanburg Herald-Journal Co., supra.*

Appellant's complaint is not helped by allegations therein that the overcharge was made by the respondents "as they have habitually done," and that "the overcharge has been habitually practiced" by the respondents. An intentional breach of a contract is not in itself evidence of fraud in a legal sense, so as to justify a claim for punitive damages. See *Ex parte Hollman,* 79 S. C. 9, 60 S. E. 19, 21 L. R. A., N. S., 242, 14 Ann. Cas. 1105. It therefore would not be permissible, in the present case, to offer evidence of the alleged habitual making of the overcharge by the respondents. For the same reason, the allegations in question were properly ordered stricken. *Carter v. American Fruit Growers,* 136 S. C. 389, 134 S. E. 292; *Colt Co. v. Robinson,* 137 S.

C. 224, 135 S. E. 312; *Williams v. Atlantic Coast Lumber Co., supra.*

All exceptions are overruled, and the order of the Circuit Court affirmed.

FISHBURNE, STUKES, TAYLOR and OXNER, JJ., concur in result.

OXNER, Justice (concurring).

It is alleged in the complaint that the defendants, who "are engaged in the business of housing, storing and selling tobacco as public licensed warehousemen", charged and collected from plaintiff auction fees in excess of the rate fixed by statute. Under these circumstances plaintiff had an election to bring an action *ex contractu* to recover back the illegal overcharges exacted by the defendants, or to bring an action *ex delicto* for the breach of a duty imposed by statute. It has uniformly been held that where a public carrier charges and collects more than allowed by law, such exaction is a tort for which the shipper is entitled, as for other torts, to compensation from the wrongdoer, provided the payments are involuntarily made. *Lewis-Simas-Jones Co. v. Southern Pacific Co.,* 283 U. S. 654, 51 S. Ct. 592, 75 L. Ed. 1333; *Adams et al. v. Mills, Director General, et al.,* 286 U. S. 397, 52 S. Ct. 589, 76 L. Ed. 1184. The shipper may bring an action in contract to recover the overcharge or he may sue in tort for the carrier's breach of duty imposed by. law. *Smith v. Chicago & Northwestern Railway Co.,* 49 Wis. 443, 5 N. W. 240; 13 C. J. S., Carriers, § 323, page 774. The defendants are public warehousemen whose business is regulated by statute and no good reason appears why under these circumstances the plaintiff should not have the same remedies as those given to a shipper against a carrier for an alleged overcharge. The excess in the present case is alleged to have been exacted deliberately and willfully as a part of a plan and scheme to cheat and defraud plaintiff and other customers of defendants. It would seem clear from

this language that the plaintiff has elected to proceed in tort and not, as held by the Court below, *ex contractu,* "for money unlawfully had and received."

It is generally agreed that there can be no recovery either in contract or in tort unless the payments are made under such circumstances as to be deemed involuntary. The doctrine of voluntary payment, however, "presupposes *bona fides* on the part of the person exacting payment. It has no application when the money is obtained by the fraud of the person receiving it." 40 Am. Jur., Payment, Section 185, page 842. The question of whether money paid under a mistake of law may be recovered has provoked much dispute. Ordinarily money voluntarily paid on a claim of right, with full knowledge of all the facts, in the absence of fraud, duress, or compulsion, cannot be recovered back merely because the aggrieved party was ignorant of the law relating to his liability. 40 Am. Jur., page 856. As a general rule fraud cannot be predicated upon misrepresentation as to matters of law but there are exceptions. *Koon v. Pioneer-Pyramid Life Insurance Co.,* 175 S. C. 117, 178 S. E. 503. Much depends upon the circumstances of the particular case. It has been held that "the misrepresentation is actionable where one who himself knows the law deceives another by misrepresenting the law to him, or knowing such other to be ignorant of it, takes advantage of him through such ignorance." 23 Am. Jur., Fraud and Deceit, Section 48, page 813.

Where it is sought to recover the amount of an overcharge, it is incumbent upon the plaintiff to allege and prove some fact or facts which show that the money was paid under circumstances deemed to be involuntary. *Hardaway v. Southern Railway,* 90 S. C. 475, 73 S. E. 1020, Ann. Cas. 1913D, 266. It is not necessary to allege that plaintiff made a demand before suit for the return of the overcharge. *Baltimore & O. S. W. Ry. Co. v. Shirk,* 56 Ind. App. 42, 104 N. E. 864. If the plaintiff in the case at bar was induced to pay this overcharge by fraud

or deception, there can be no doubt of his right to recover both actual and punitive damages.

Applying the foregoing principles to the complaint in the instant case, do the allegations warrant the recovery of punitive damages? It is alleged that the defendants "deliberately" and "willfully" overcharged the plaintiff "as a part of a plan and scheme to cheat and defraud" him and other customers doing business at the defendants' warehouse. The effect of these allegations is, I think, to charge the defendants with knowingly violating this statute with the intent to cheat and defraud. However, it does not appear from the complaint that plaintiff was unaware of the proper charges; nor is there any allegation that through misrepresentation or fraudulent concealment of the facts he was misled or deceived. The burden was upon the plaintiff to allege facts sufficient to sustain his claim to punitive damages. In the particulars mentioned, the allegations are deficient.

For the reasons stated, I think the order appealed from should be affirmed. However, I limit my concurrence in the opinion of the Court to the result, as I am not in accord with some of the views therein expressed.

FISHBURNE, STUKES and TAYLOR, JJ., concur.