19273

DAILEY COMPANY, INC., Respondent, v. AMERICAN
INSTITUTE OF MARKETING SYSTEMS, INC., Appellant
(183 S. E. (2d) 444)

E. S. *Swearingen, Esq., of Willcox, Hardee, Palmer, O'Farrell, McLeod & Buyck,* Florence, *for Appellant,*

*David W. Keller, Esq., of McGowan, Nettles & Keller, P. A.,* Florence, *for Respondent,*

August 19, 1971.

LEWIS, Justice.

The trial of this action for fraud and deceit resulted in a jury verdict in plaintiff's favor against the defendant for both actual and punitive damages. Timely trial motions of the defendant for a nonsuit and directed verdict were refused by the trial judge, as were defendant's post trial motions for judgment notwithstanding the verdict and for a new trial. Defendant has appealed upon exceptions which, liberally construed, challenge the foregoing rulings of the lower court upon the ground that (1) there was no evidence to sustain the judgment for either actual or punitive damages; and (2), failing in that contention, a new trial should be granted because of alleged error in the admission of testimony as to other litigation between the parties relative to the subject of the present action. Since we have concluded that there was no factual support for the judgment, the other questions need not be considered.

Plaintiff, Dailey Company, Inc., was a South Carolina Corporation engaged in the real estate business in Florence, South Carolina. Mr. William C. Dailey was the sole owner

of the corporation and represented it in all of the transactions out of which this litigation arose. Defendant, American Institute of Marketing Systems, Inc., was a Missouri Corporation, engaged principally in the promotion of real estate sales on a national basis by furnishing, for a price, sales assistance, training, and techniques to real estate firms which contracted to receive such services.

As a result of negotiations between the parties, a written agreement was entered into under date of April 29, 1967, whereby plaintiff contracted for the services of defendant. This action is based upon allegations that defendant fraudulently induced plaintiff to enter into the contract with the intention not to perform its obligations thereunder. Plaintiff relies upon the established legal principle that, "where one promises to do a certain thing, having at the time no intention of keeping his agreement, it is a fraudulent misrepresentation of a fact, and actionable as such." *Cook v. Metropolitan Life Ins. Co.*, 186 S. C. 77, 194 S. E. 636, 639. The cited case also states the principle that a mere breach of contract does not constitute fraud.

The question then is whether there was any evidence to sustain a finding that defendant entered into the contract in question with no intention of keeping the agreement.

The evidence shows that in May 1967 a representative of defendant contacted Dailey for the purpose of selling defendant's program for real estate promotion. It was represented to Dailey that the services of defendant consisted of a two-part program. One part consisted of advertising and promotion to solicit real estate listings and also a referral system. Dailey was told that defendant had an extensive operation throughout the United States through which it obtained advance notice of the people moving into the Florence area, and that plaintiff would be given, in advance, the names of people moving to Florence so that plaintiff's representatives could contact them for the purpose of making real estate sales. The second phase of the program related

to the training of plaintiff's personnel. The agent of defendant represented that defendant would furnish on the job training for plaintiff's personnel, using defendant's sales equipment, manuals, brochures, and materials. In return for the foregoing services, plaintiff was to pay the sum of $72.50 per month for 36 months, two months to be paid in advance.

As a result of the above negotiations, plaintiff signed a written contract for the services of defendant and at the same time gave a check for $145.00, representing an advance payment for two months, and a promissory note to secure the remaining 34 monthly payments. These instruments were mailed to the home office of defendant, where the contract was signed by defendant and a copy later returned to the plaintiff. Defendant, within a day or so, discounted the note with Western Finance Corporation, an independent finance company.

Shortly after signing the contract, Dailey made an investigation of the defendant and learned, according to his testimony, that the defendant had an "adverse reputation." Dailey communicated this information to defendant's agent and stopped payment on the check given at the time the contract was signed.

After payment was stopped on the check, defendant's agent contacted Dailey about the matter on May 23, 1967. Dailey testified that he and the agent worked out an agreement under which the agent personally guaranteed that, if Dailey would make the contract payments for three months, the agent would see to it that Dailey would not have to pay any more under the contract. Dailey did not then know that the note given by him had been assigned by defendant to Western Finance Corporation. In any event, Dailey issued a check to defendant on May 23, 1967, in the amount of $217.50, representing three monthly payments.

The testimony of Dailey, that plaintiff's liability under the contract was to be terminated upon the payment of $217.50, is contrary to the other evidence in the case. De-

fendant's testimony was to the effect that, instead of relieving plaintiff of liability under its contract, an agreement was reached whereby the initial term of the contract was reduced from 36 months to 12 months, with the check for $217.50 to apply thereon, provided plaintiff notified defendant in writing during the eleventh month of his election to terminate the contract at the end of twelve months, otherwise the agreement would continue for the original 36 month period. Confirmation of an agreement to the latter effect was contained in a delayed letter by defendant to plaintiff under date of August 9, 1967, reciting a telephone conversation with Dailey on August 7, 1967, and stating apologies for not having sooner confirmed such previous agreement between Dailey and defendant's representative. The letter also agreed that, upon completion of plaintiff's obligations under the revised twelve-month contract and upon receipt of the required notice, defendant would indemnify Western Finance Corporation, to whom the note had been sold, for the balance remaining at that time on the original obligation for thirty-six months. Also, the check for $217.50, issued by Dailey, at the time he says the contract was terminated, contained the following notation: "3 months payment on 12 month contract."

Apparently, plaintiff gave no notice of termination of the contract at the end of twelve months, but considered, as he testified, that it had been terminated when he made the payment of $217.50 on May 23, 1967. Defendant construed the May 23, 1967 agreement as previously stated and there is now litigation pending between the parties in which defendant is asserting the right to recover the total amount due on the original thirty-six month contract.

Whether there was an agreement to terminate plaintiff's liability upon a payment of $217.50, as plaintiff contends, is not in issue in this case. We deal here only with the question of whether there was any proof to sustain the finding that the contract was induced by defend-

ant with no intent to perform. We find no evidence to sustain such conclusion.

On May 11, 1967, approximately ten days after defendant, in writing, notified plaintiff of the acceptance of the contract, defendant forwarded to plaintiff a loose-leaf volume containing its sales materials and instructions, entitled "Real Estate Marketing." Accompanying the volume was an explanatory letter urging plaintiff to promptly return certain documents, including a Questionnaire and Survey Form so that certain portions of the program could be put into operation. This letter also stated that a telephone courtesy card was enclosed with the notation: "Call us collect on urgent referrals or on any problems or circumstances where we may be of service to you." The letter also contained a notation calling plaintiff's attention to certain pages of the materials and instructions which outline the various necessary steps to be taken by plaintiff before any sales brochures could be manufactured.

On May 23, 1967, about twelve days after the above instructions and materials were forwarded to plaintiff, Dailey, as president of plaintiff, acknowledged in writing that a representative of defendant had completed a "sales seminar" for the benefit of plaintiff's organization, and that the representative had "made an excellent presentation" by way of explanation of defendant's sales program and its many facets.

Dailey also acknowledged in his testimony that defendant referred to plaintiff at least one prospective customer, but could not recall whether other referrals were made or the number.

After plaintiff stopped payment on the initial check given to defendant and the subsequent issuance of the check for $217.50, there is no showing that plaintiff ever attempted to perform any obligation under the contract. Plaintiff's reason for stopping payment on the first check shortly after the contract was signed is best explained by the testimony of Dailey. On direct examination, he testified: "I personally

had become convinced that the program would not be beneficial to our company as represented to us. I didn't intend to put any more money into a 'rat-hole,' so to speak." He also stated on cross-examination:

"Q. At that time when you stopped payment, did you have anything to base an opinion on as to lack of performance on the part of AIMS Corporation (defendant)?

"A. Well, the reputation of the company which I had come across is what brought about the termination.

"Q. And you decided in the very beginning that you wanted out of this thing, and it wasn't because they had failed to perform for you, was it?

"A. No, sir."

Dailey, the president of the plaintiff corporation, was an experienced businessman. The contract signed by him was substantially as represented by defendant's agent. He, according to his own testimony, became dissatisfied with the agreement shortly after it was entered into, sought to relieve himself of further liability, and thereafter considered that he had done so. His actions in so doing were not prompted by any failure on the part of defendant to perform its obligations. The events which followed do not sustain plaintiff's contention that defendant entered into the contract with no intention to perform its part of the bargain. This was the basis of plaintiff's cause of action. Since there was no evidence to sustain it, defendant's motion for a directed verdict should have been granted.

Plaintiff's testimony was directed entirely to the mere failure of defendant to perform its obligations under the contract. As previously pointed out, the mere breach of the contract, if sustained would not constitute fraud.

The judgment is accordingly reversed and the cause remanded for entry of judgment in favor of defendant.

Moss, C. J., and BUSSEY, BRAILSFORD and LITTLEJOHN, JJ., concur.