**INVESTORS PREMIUM CORPO-
RATION, Plaintiff,**

v.

**BURROUGHS CORPORATION,
Defendant.**

**Civ. A. No. 72-1526.**

United States District Court,
D. South Carolina,
Columbia Division.

Heard Jan. 17, 1974.

Decided Feb. 1, 1974.

40

Roy E. Garris, Jr., and W. Ralph Garris of Garris & Garris, Columbia, S. C., for plaintiff.

James M. Windham and R. B. Herbert, Jr., of Herbert, Dial & Windham, Columbia, S. C., for defendant.

HEMPHILL, District Judge.

### ORDER

ON DEFENDANT'S MOTION UNDER RULE 37(d) TO DISMISS PLAINTIFF'S ACTION FOR FAILURE TO PROPERLY ANSWER WRITTEN INTERROGATORIES, AND ON DEFENDANT'S MOTION UNDER RULE 56 FOR SUMMARY JUDGMENT.

Defendant has moved under Federal Rule of Civil Procedure 37(d) [1] for dismissal of the second amended complaint with prejudice and costs, because of plaintiff's failure to properly answer written interrogatories, denoting purported answers as sham, and, in the alternative, defendant moves under Rule 56, Federal Rules of Civil Procedure, for summary judgment in favor of defendant. A thorough examination of the entire record convinces the court that defendant is entitled to entry of judgment in its favor on its second motion.

## STATEMENT OF FACTS

Plaintiff had used defendant's posting equipment since 1967 and prior to October, 1970, looked at computers manufactured by at least three major producers and also considered off-premises computer service in its business. Plaintiff made a close study of its computer needs and ordered an I. B. M. computer.

Prior to February, 1971, plaintiff declined to complete the I. B. M. purchase [2] and in February, 1971, attended two demonstrations of defendant's L–5000 computer to see it firsthand in operation.[3] Plaintiff's own employees operated it.

Defendant expressed to plaintiff a concern that the single keyboard on the computer might not post ledgers as fast as the two keyboards on the two posting machines then in use by plaintiff.

Nevertheless in March, 1971, as an experiment, rather than purchasing, plaintiff leased one of defendant's L–5000 computers on a one-year trial basis despite the higher cost of that shortest possible lease. The equipment was set up and running by July 31, 1971. Plaintiff had about 6000 active accounts at that time. (Plaintiff's answer No. 41(a)). The one-year trial lease was limited by a "conditional" provision which allowed plaintiff to get out of it at will (Harris deposition, pages 39–42; also, Exhibit C attached thereto).

After using the single computer for only two months under the one-year lease experiment, plaintiff decided to buy outright two such computers, said purchases later being converted to a five year lease from a leasing company.

Defendant supplied only the computers (hardware) and not the program systems (software).

Plaintiff did not order specially designed equipment (hardware) from defendant.

Plaintiff continues to use all of the hardware supplied by defendant and defendant continues to service it. Plaintiff now has about 7700 active accounts —up from 6000 when it began using defendant's computers.

Not only does plaintiff continue to use all of the hardware supplied by defendant, but in doing so, plaintiff is meeting the payroll and making a profit. (Harris deposition, page 52).

## STATEMENT OF PROCEEDINGS

Plaintiff originally sought "a million dollars" actual and punitive damages on a complaint in which allegations of simple breach of warranty were embellished by characterizing as fraud, the representations defendant had made respecting its product—a computer. When defendant moved to strike the fraud and punitive damages from the complaint, plaintiff served its first amended complaint and attempted to enlarge the lawsuit by

1. Fed.R.Civ.P. 37(d). Failure of Party to Attend or Serve Answers. If a party . . . fails to serve answers to interrogatories submitted under Rule 33, after proper service of such interrogatories, the court on motion and notice may strike out all or any part of any pleading of that party, or dismiss the action or proceeding or any part thereof, or enter a judgment by default against that party.

2. Defendant's interrogatory No. 36(c) asks: (Q) Did plaintiff, prior to February, 1971, after giving a letter of intent to purchase, ordering, or buying IBM's System 3, Mod 6, then decline to complete such purchase? A. Yes.

3. Plaintiff's answer to interrogatories no. 37(a) and Harris deposition, page 30.

purporting to set out not one, but four, different alleged causes of action for (a) simple breach of warranty, (b) faulty design and manufacture, (c) fraudulent misrepresentation, and (d) breach of service contract. Even a casual reading of the first amended complaint reveals that the gravamen of plaintiff's alleged grievance is *ex contractu*, not *ex delicto*.

Defendant moved to strike the allegations of tort from the first amended complaint and the court ordered that plaintiff file a second amended complaint complying with Rule 8(a).[4] Although the second amended complaint which plaintiff filed somewhat revised and refined the first, it was still subject to the same objections as the first. Nevertheless, rather than serve a third motion to strike, defendant filed its answer and then its amended answer; following which discovery proceedings were begun. Plaintiff served its notice to produce maintenance and repair records and its written interrogatories to which defendant duly responded. Defendant in turn served its written interrogatories on August 1, 1973.

## FAILURE TO PROPERLY ANSWER WRITTEN INTERROGATORIES

■ The court finds that, despite an irregular and ragged furnishing of the information properly requested, that insufficient grounds for a dismissal exist. As to such issue the motion is refused.

## ANALYSIS OF MOTION FOR SUMMARY JUDGMENT

The gravamen of plaintiff's second amended complaint is that computer equipment manufactured and sold by defendant for use in plaintiff's insurance premium service business did not perform as defendant had represented or warranted it would, and that defendant failed to service said equipment as it agreed to do under its maintenance contract. Here are presented both a simple breach of warranty action and a simple breach of contract action.

■ Plaintiff has, in its second count, characterized as careless, negligent, wilful and wanton, through faulty design, manufacture, etc., defendant's alleged failure to furnish a computer which would operate as warranted. In its third count, plaintiff has characterized as fraudulent defendant's representations and actions in promoting and selling its product to plaintiff.

It is not the characterization of the defendant's conduct that labels the action as one involving a tort, but the *facts* alleged by the plaintiff. (Emphasis in original.) Moody v. Stem, 214 S.C. 45, 58, 51 S.E.2d 163, 168 (1948).

No facts here alleged, nor developed in discovery proceedings, or revealed anywhere else in the record, constitute negligence or wilfulness, and none constitute fraud. Dailey Co. v. American Inst. of Mktg. Sys., Inc., 256 S.C. 550, 183 S.E.2d 444 (1971).

The real nature of plaintiff's grievance being ex contractu and there being no factual showing ex delicto, accordingly, any recovery would have been limited to such damages as are the natural and proximate result of the breach.[5] Dailey

4. Fed.R.Civ.P. 8(a). Claims for Relief. A pleading which sets forth a claim for relief . . . shall contain (1) a short and plain statement of the grounds upon which the court's jurisdiction depends . . . (2) a short and plain statement of the claim showing that the pleader is entitled to relief, and (3) a demand for judgment for the relief to which he deems himself entitled. Relief in the alternative or of several different types may be demanded.

5. 2A Code of Laws of South Carolina § 10.-2-714 (1966) provides:

Buyer's damages for breach in regard to accepted goods.

(1) Where the buyer has accepted goods and given notification (subsection (3) of § 10.2-607) he may recover as damages for any nonconformity of tender the loss resulting in the ordinary course of events from the seller's breach as determined in any manner which is reasonable.

(2) The measure of damages for breach of warranty is the difference at the time and place of acceptance between the value of the

Co. v. American Inst. of Mktg. Sys., Inc., supra; Blackman v. Independent Life and Accident Insurance Co., 229 S. C. 54, 91 S.E.2d 709 (1956); Moody v. Stem, supra; Holland v. Spartanburg Herald Journal Co., 166 S.C. 454, 165 S. E. 203, 84 A.L.R. 1336 (1932).

Plaintiff seeks to shift attention away from the two culminating equipment sale contracts, both dated October 19, 1971, (exhibits 2 and 3 in defendant's request for admissions), and instead concentrate on the prior lease dated March 11, 1971, which had been converted to one of said sales, plaintiff all the while ignoring said conversion itself.

These culminating two sales contracts of October 19, 1971, by which plaintiff bought outright two L–5000 computers came after (in inverse order):

(a) A two and one-half months' experiment in plaintiff's business with a single L–5000 computer and auto-reader. The equipment was set up and running by July 31, 1971.

(b) Entering upon a "conditional" one-year lease dated March 11, 1971, plaintiff could experiment with the single L–5000 set-up and get out of the lease at will.

(c) Mr. Harris attended two demonstrations of the L–5000 set-up prior to entering the "conditional" one-year lease.

(d) Mr. Harris made extensive investigation of computers and computer service put out by at least three other manufacturers and one service company, including the placing of an order with I. B. M., which order he later cancelled.

All of the four affidavits[6] filed by plaintiff in support of its claims pertain to events prior to or in conjunction with plaintiff's acquisition of the single L–5000 computer with auto-reader under the lease of March 11, 1971. This lease was merged into or converted into one of the outright sales contracts (exhibit 2 in defendant's request for admissions): "To convert from 1 year lease to purchase. Conversion date to be 10–30–71". Thus all prior negotiations merged into said outright sale contract which plaintiff signed on October 19, 1971.

Prior to or in conjunction with the one-year "conditional" lease of March 11, 1971, defendant's employee had expressly warranted orally "that one Burroughs L–5000 computer and one auto-

goods accepted and the value they would have had if they had been as warranted, unless special circumstances show proximate damages of a different amount.

(3) In a proper case any incidental and consequential damages under the next section (§ 10.2–715) may also be recovered.
2A Code of Laws of South Carolina § 10.2–715 (1966) provides:
Buyer's incidental and consequential damages.—(1) Incidental damages resulting from the seller's breach include expenses reasonably incurred in inspection, receipt, transportation and care and custody of goods rightfully rejected, any commercially reasonable charges, expenses or commissions in connection with effecting cover and any other reasonable expense incident to the delay or other breach.
(2) Consequential damages resulting from the seller's breach include ·
(a) any loss resulting from general or particular requirements and needs of which the seller at the time of contracting had reason to know and which could not reasonably be prevented by cover or otherwise; and

(b) injury to person or property proximately resulting from any breach of warranty.

6. J. Frank Griffin, Jr., an individual whose occupation is not stated, swore that an unnamed employee of defendant said at an undated time in 1971 that the use of the newly installed computer equipment would be able to double plaintiff's then present volume of business without adding personnel. John W. Harris, President of plaintiff corporation, swore to the same effect as Griffin. Robert W. Pietropaola, an employee of Colonial Data Systems engaged in 1971 to write certain programs for defendant's computer installed in plaintiff's office, swore a named employee of defendant contacted him to write certain application programs but that he engaged in no system analysis or design. David B. Rivers, a director of data processing with the Shakespeare Company engaged to study plaintiff's business needs, swore that one of defendant's computers was insufficient to handle plaintiff's requirements.

reader had sufficient capacity and capability to handle plaintiff's then present business needs and to double that capacity without adding additional personnel". Plaintiff did not rely on such warranty but instead undertook an experiment with said equipment in its own business, which experiment proved that the equipment could not so perform. Thereupon, because one computer could not do the job, plaintiff converted its lease to an outright purchase, and in addition, bought a second computer outright the same day, October 19, 1971, and signed both final contracts. What had gone before was merged and "finalized" into the final writings of October 19, 1971. Plaintiff will not be allowed to go behind them.

 That plaintiff cannot have recourse to supposed representations or warranties claimed to have been made by representatives of defendant prior to the said written contract is elemental; the terms of such a contract cannot be varied by parole evidence. "It is axiomatic that a written agreement betwixt two persons merges all prior talk about the subject of the agreement." Parham-Thomas-McSwain, Inc. v. Atlantic Life Insurance Co., 111 S.C. 37, 96 S.E. 697, 698 (1918).

Plaintiff's persistent efforts to relate all dealings to the March 11, 1971 lease is fatal to its contention because that lease agreement specifically was converted into one of the final sale agreements of October 19, 1971. This in turn formed the basis for the third-party-sale-and-lease with Equipment Leasing Corporation. (Exhibits 4 and 4A to defendant's request for admissions).

 Plaintiff's citation of Sec. 10.2–313(1)(a), S.C.Code, 1962, Anno. pertaining to samples or models giving rise to express warranties, is not pertinent here. This situation is one in which all prior negotiations, demonstrations, the "conditional" lease, and the experiments, culminated in two outright sales whose terms were put into a final written expression signed by plaintiff—the two Equipment Sale Contracts dated October 19, 1971. They set out the entire agreement between the parties and by a separate conspicuous paragraph all outside matters are excluded. This conforms to Sec. 10.2–202, S.C.Code, 1962, Anno. [7] as a final written expression of the parties and to Sec. 10.2–316, S.C.Code, 1962, Anno.[8] as an exclusion of matters not specified in the final agreements.

The express written warranty under which plaintiff took the equipment from

7. § 10.2–202. Final written expression; parol or extrinsic evidence.—Terms with respect to which the confirmatory memoranda of the parties agree or which are otherwise set forth in a writing intended by the parties as a final expression of their agreement with respect to such terms as are included therein may not be contradicted by evidence of any prior agreement or of a contemporaneous oral agreement but may be explained or supplemented

(a) by course of dealing or usage of trade (§ 10.1–205) or by course of performance (§ 10.2–208) ; and

(b) by evidence of consistent additional terms unless the court finds the writing to have been intended also as a complete and exclusive statement of the terms of the agreement.

8. § 10.2–316. Exclusion or modification of warranties.—(1) If the agreement creates an express warranty words disclaiming it are inoperative.

(2) Subject to subsection (3), to exclude or modify the implied warranty of merchant-

ability or any part of it the language must mention merchantability and in case of a writing must be conspicuous, and to exclude or modify any implied warranty of fitness the exclusion must be by a writing and conspicuous. Language to exclude the implied warranty of merchantability or of fitness for a particular purpose must be specific, and if the inclusion of such language creates an ambiguity in the contract as a whole it shall be resolved against the seller.

(3) Notwithstanding subsection (2)

(a) unless the circumstances indicate otherwise, all implied warranties are excluded by specific language which in common understanding calls the buyer's attention to the exclusion of warranties and makes plain that there is no implied warranty ; and

(b) when the buyer before entering into the contract has examined the goods or the sample or model as fully as he desired or has refused to examine the goods there is no implied warranty with regard to defects which an examination ought in the circumstances to have revealed to him ; and

defendant, first by lease and then by sale to the leasing company which leased back to plaintiff, is set out in the record in exhibit A and B to defendant's answers to plaintiff's written interrogatories (said exhibits being part of defendant's answer No. 43). The written contract specifically provides in a separate paragraph: "THERE ARE NO UNDERSTANDINGS, AGREEMENTS, REPRESENTATIONS OR WARRANTIES, EXPRESS OR IMPLIED (INCLUDING ANY REGARDING MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE) NOT SPECIFIED HEREIN, RESPECTING THIS CONTRACT OR THE EQUIPMENT HEREUNDER. THIS CONTRACT STATES THE ENTIRE OBLIGATION OF SELLER IN CONNECTION WITH THIS TRANSACTION." (original emphasis). Such an exclusion is authorized under Sec. 10.2–316, S.C. Code, 1962, Anno.[9]

■ Therefore, plaintiff's citations of Sec. 10.2–316(2) [10] and Sec. 10.1–201(10) [11], S.C.Code, 1962, Anno. in opposition are not apt because the sale contracts fully comply with the requirements of those citations; the exclusionary language is set out in a separate paragraph in larger contrasting type—being in ALL CAPITAL LETTERS.

■ The contract in express language precludes plaintiff from recovering any incidental or consequential damages, providing as it does that in any event, defendant shall not be held liable under the agreement for any more than exchange of equipment under the express warranty, and including in the agreement the clause that the purchaser thereunder expressly waives incidental or consequential damages. Such a limitation of damages is authorized by Sec. 10.2–719, S.C.Code, 1962, Anno.[12] and is common in these types of commercial agreements. There is nothing unconscionable about them in situations such as this.

Plaintiff refers to its second count of the second amended complaint (alleged faulty design, manufacture, and installation) and seeks to characterize as torts defendant's installation of equipment which could never have performed its intended function, defendant's alleged failure to properly design a system for plaintiff's business, and defendant's furnishing of allegedly defective hardware. Taking all of these claims as true, they avail plaintiff nothing, because, in es-

(c) an implied warranty can also be excluded or modified by course of dealing or course of performance or, between merchants, by usage of trade.

(4) Remedies for breach of warranty can be limited in accordance with the provisions of this Title on liquidation or limitation of damages and on contractual modification of remedy (§§ 10.2–718 and 10.2–719).

9. See note 8, supra.

10. Ibid.

11. 2A Code of Laws of South Carolina § 10.-1–201(10) defines "conspicuous", in part, as: Language in the body of a form is 'conspicuous' if it is in larger or other contrasting type or color.

12. § 10.2–719. Contractual modification or limitation of remedy.—(1) Subject to the provisions of subsections (2) and (3) of this section and of the preceding section (§ 10.-2–718) on liquidation and limitation of damages,

(a) the agreement may provide for remedies in addition to or in substitution for those provided in this Title and may limit or alter the measure of damages recoverable under this Title, as by limiting the buyer's remedies to return of the goods and the repayment of the price or to repair and replacement of nonconforming goods or parts; and

(b) resort to a remedy as provided is optional unless the remedy is expressly agreed to be exclusive, in which case it is the sole remedy. (2) Where circumstances cause an exclusive or limited remedy to fail of its essential purpose, remedy may be had as provided in this act. (3) Consequential damages may be limited or excluded unless the limitation or exclusion is unconscionable. Limitation of consequential damages for injury to the person in the case of consumer goods is prima facie unconscionable but limitation of damages where the loss is commercial is not.

sence, though under another name, they restate the claimed breach of warranty set out in the first count of the second amended complaint.

Furthermore, all of the acts characterized by plaintiff as torts took place prior to or in conjunction with the lease of March 11, 1971. Plaintiff's having thereafter entered the sale contracts of October 19, 1971 precludes going behind that final agreement.

Plaintiff refers to its third count of the second amended complaint (alleged fraud and deceit) and once again characterizes as a tort the alleged representations that a single computer set-up would handle plaintiff's business. Not only is this merely a restatement of the breach of warranty claim, but in addition it is obvious that one of the essential elements of fraud is lacking. Plaintiff did not rely on the representation (assuming it was made) but instead entered into a "conditional" lease on March 11, 1971, and after proving the alleged representation false by the experiment in its own business, plaintiff proceeded to buy outright two computers —rather than continue to lease only one —on October 19, 1971. Plaintiff's citation of this court's decision in MacAndrews & Forbes Co. v. American Barmag Corp., 339 F.Supp. 1401 (D.S.C. 1972), specifies reliance as an element of fraud, but plaintiff acted on its own knowledge that one computer would not do the job; thereafter it bought two.

■ Plaintiff refers to the fourth count of the second amended complaint (alleged breach of service contract) and relies upon exhibit A to plaintiff's supplemental answers as evidence to sustain this cause of action. Plaintiff states that this log of alleged problems and service calls was not begun until plaintiff had litigation in mind.[13] Plaintiff admits that problems arose from causes other than hardware, for example, software and operators[14]. This log is totally inadequate because whatever may be the cause of problems for which service calls are made, defendant on its part continues to service the equipment. Plaintiff continues to make a profit using it.[15]

## CONCLUSIONS

The record is devoid of any facts sustaining the second and third counts of the second amended complaint in that those counts merely characterize breach of warranty as either negligence or fraud. The first count, alleged breach of warranty, must fail because the written sale contracts of October 19, 1971 supercede all prior dealings, constitute the final written agreement between the parties, fully comply with the state commercial code, and have not been breached. The fourth count, alleged breach of service contract, must fail for want of facts showing the claimed breach, or any resulting damages.

In conclusion, there is no material issue of fact. The gravamen of plaintiff's grievance is alleged breach of contract without any factual showing of tort. There is no factual showing of breach of contract. Plaintiff merely attempts to characterize certain innocent facts as torts or as breaches of warranty or contract, and also attempts to infuse significance into claimed facts, which even taken as true, are immaterial.

Plaintiff has failed to present any material issue of fact. Accordingly, defendant's motion for summary judgment dismissing the second amended complaint with prejudice and with cost is granted.

And it is so ordered.

---

13. Harris deposition of January 7, 1974, page 81.

14. Ibid., page 84.

15. Ibid., page 52.