**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

HALL'S RECLAMATION, INCORPORATED,
Plaintiff-Appellee,

v.                                                          No. 95-2870

APAC CAROLINA, INC.,
Defendant-Appellant.

Appeal from the United States District Court
for the District of South Carolina, at Florence.
Cameron McGowan Currie, District Judge.
(CA-94-87)

Argued: October 31, 1996

Decided: December 18, 1996

Before WILLIAMS, MICHAEL, and MOTZ, Circuit Judges.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

**ARGUED:** Mark I. Levy, HOWREY & SIMON, Washington, D.C.,
for Appellant. Nathan Maxwell Crystal, Columbia, South Carolina,
for Appellee. **ON BRIEF:** Patricia L. O'Beirne, Timothy K. Arm-
strong, HOWREY & SIMON, Washington, D.C., for Appellant.
James B. Van Osdell, Cynthia Graham Howe, VAN OSDELL, LES-
TER, HOWE & RICE, P.A., Myrtle Beach, South Carolina, for
Appellee.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

In this diversity action, APAC-Carolina, Inc. (APAC) appeals a $3.2 million jury verdict in favor of Hall's Reclamation, Inc. (Hall's) for fraud, breach of contract, breach of contract accompanied by a fraudulent act, and violation of the South Carolina Unfair Trade Practices Act (SCUTPA), see S.C. Code Ann. § 39-5-20 (Law. Co-op. 1985). We affirm.

I.

Hall's, a trucking company, began providing trucking and hauling services for APAC, an asphalt paving contractor, in 1989. At that time, APAC hauled asphalt to job sites either by hiring outside trucking firms or by using its own in-house fleet of trucks. In June of 1991, after terminating its primary outside trucker, APAC requested that Hall's increase the amount of work it did for APAC. One month later, in July of 1991, APAC vice-president Andy Jones met with Gerald Hall, the owner of Hall's, to discuss the future relationship of the two companies. At that meeting, Jones told Hall that APAC had decided to get out of the trucking business and asked if Hall's would like to buy APAC's truck fleet. Hall declined, noting the age and disrepair of APAC's fleet. Later that year, on December 13, 1991, Jones offered Hall the following deal: if Hall's would purchase APAC's fleet of used trucks and dedicate its entire trucking operation to serving APAC's needs, APAC would guarantee Hall's $4 million worth of business each year. This time, Hall accepted Jones' offer.

Although the agreement was never reduced to writing, Hall's notes from the December 13, 1991 meeting were introduced at trial as documentation of the agreement. In addition, the evidence revealed that Jones orally confirmed the contract to several individuals. On April 21, 1992, Hall's agreement to purchase APAC's trucks was finalized.

2

The parties agreed that Hall's would pay $215,000 for both the purchase of the trucks and APAC's guarantee of $4 million per year in business.

Hall then proceeded to obtain financing for the transaction from NationsBank. As part of the loan application process, a NationsBank loan officer spoke with Jones by telephone and confirmed that APAC had guaranteed Hall's at least $4 million per year in hauling work as Hall had stated in a letter requesting the loan. NationsBank subsequently approved the loan.

On June 20, 1992, Hall's took possession of the APAC trucks. In addition to purchasing and repairing the used trucks, Hall's made several financial and personnel commitments in anticipation of the expected increase in APAC business. Specifically, Hall's hired drivers, administrative personnel, and a comptroller in preparation for APAC's guaranteed work. Hall's also leased a shop in Florence, South Carolina, near APAC's Florence asphalt plant.

APAC never fulfilled its promise to provide Hall's with $4 million of work per year. During the second half of 1992, Hall's received just $520,000 of work from APAC, a quarter of that due under the agreement. In all of 1993, Hall's received only $1,759,000 worth of APAC work, less than half of the amount guaranteed by APAC. The lack of work placed a financial strain on Hall's. In March 1994, the company closed its business and sold its trucks at auction to pay its creditors.

In January 1994, Hall's filed a complaint in South Carolina state court, alleging that APAC had committed fraud, breached its agreement to provide Hall's with $4 million of work per year, and engaged in unfair trade practices. APAC removed the case to the United States District Court for the District of South Carolina where the case was tried before a jury on August 15-18, 1995. The case was submitted to the jury on four claims: fraud; breach of contract; breach of contract accompanied by a fraudulent act; and violation of SCUTPA. The jury returned a verdict for Hall's on all four claims.

The jury awarded Hall's $2.4 million in compensatory damages on each of the claims for fraud, breach of contract, and breach of contract accompanied by a fraudulent act (which were not to be aggregated

3

under the court's instructions); on the unfair trade practices claim, the jury awarded damages of $167,000, which were trebled under SCUTPA, see S.C. Code Ann. § 39-5-140(a) (Law. Co-op. 1985). The jury then heard additional evidence and received further instructions regarding punitive damages on the claims for fraud and breach of contract accompanied by a fraudulent act, and awarded punitive damages of $800,000 on each of those two claims (which again were not to be aggregated).

On September 21, 1995, the district court denied APAC's motions for judgment as a matter of law and for a new trial. The court also ruled that the damages awarded on the SCUTPA claim duplicated the damages awarded on the other claims. Accordingly, the district court entered an amended final judgment for Hall's in the amount of $3.2 million ($2.4 million in compensatory damages on each of the claims for fraud, breach of contract, and breach of contract accompanied by a fraudulent act, and $800,000 in punitive damages on the fraud and fraudulent-breach claims). APAC now appeals the district court's denial of its motions for judgment as a matter of law and for a new trial.

II.

On the fraud claim, APAC argues that the district court erred in denying its motion for judgment as a matter of law because Hall's failed to prove anything more than breach of contract at trial.* According to APAC, "Hall's proof of the alleged fraud consisted of nothing more than APAC's failure to give Hall's $4-million worth of business . . . ." (Appellant's Br. at 26.) We review the district court's denial of APAC's motion for judgment as a matter of law de novo. See In re Wildewood Litigation, 52 F.3d 499, 502 (4th Cir. 1995); White v. County of Newberry, 985 F.2d 168, 172 (4th Cir. 1993). In doing so, we must determine whether the jury's verdict is supported by substantial evidence in the record. See White , 985 F.2d at 172. That is, we must determine whether "a jury, viewing the evidence in the light most favorable to [Hall's], could have properly reached the

_____

*APAC also argues that any breach of contract claim is barred by the Statute of Frauds. For the reasons set forth in Part III of this opinion, we need not address this issue.

4

conclusion reached by this jury." Wildewood, 52 F.3d at 502 (emphasis added); see also Austin v. Torrington Co. , 810 F.2d 416, 420 (4th Cir.), cert. denied, 484 U.S. 977 (1987).

In South Carolina, fraud is proven when a party establishes by clear, cogent, and convincing evidence the following elements:

> (1) a representation; (2) its falsity; (3) its materiality; (4) either knowledge of its falsity or a reckless disregard of its truth or falsity; (5) intent that the representation be acted upon; (6) the hearer's ignorance of its falsity; (7) the hearer's reliance on its truth; (8) the hearer's right to rely thereon; [and] (9) the hearer's consequent and proximate injury.

M.B. Kahn Constr. Co. v. South Carolina Nat'l Bank, 271 S.E.2d 414, 415 (S.C. 1980); see also First State Sav. & Loan v. Phelps, 385 S.E.2d 821, 824 (S.C. 1989). While "a mere violation of a contract does not support a fraud claim," Duc v. Orkin Exterminating Co., 729 F. Supp. 1533, 1536 (D.S.C. 1990), entering into a contract without the present intention of rendering performance under the contract does, see Thomas & Howard Co. v. Fowler, 82 S.E.2d 454, 456 (S.C. 1954); see also Buzhardt v. Cromer, 249 S.E.2d 898, 900 (S.C. 1978) (promisor liable for fraud where he had no present intention of performing the promise); Woods v. South Carolina Highway Dep't, 431 S.E.2d 260, 263 (S.C. Ct. App. 1993) (summarizing South Carolina law concerning when the failure to honor a promise amounts to fraud because the promisor lacked the intention to perform at the time the promise was made). Thus, the critical inquiry for the jury was whether APAC's agreement to provide Hall's with $4 million worth of business per year was fraudulent when made. Although breach of an oral agreement does not establish fraud, see Winburn v. Ins. Co. of North America, 339 S.E.2d 142, 146 (S.C. Ct. App. 1985), breach of an oral agreement coupled with other evidence is sufficient to establish fraudulent intent not to perform the agreement, see id. ("Nonobservance of a promise may support an inference of a lack of intent to perform only when it is coupled with other evidence."); see also Daily Co. v. American Inst. of Marketing Systems, Inc., 183 S.E.2d 444, 445-46 (S.C. 1971).

5

At trial, Hall's presented evidence establishing that APAC breached the oral agreement to provide Hall's with $4 million of business per year by providing only $520,000 of work during the second half of 1992 and only $1,759,000 of work during all of 1993. Hall's also presented "other evidence," see Winburn, 339 S.E.2d at 146, establishing that APAC never intended to perform the contract. Specifically, Hall's presented evidence that APAC represented to Hall's, NationsBank, and several Hall's employees that APAC was getting out of the trucking business, that Hall's would be APAC's trucker, and that APAC would guarantee Hall's $4 million of business per year, while never intending to get out of the trucking business or provide Hall's with $4 million of business per year. Furthermore, Hall's presented evidence establishing that APAC acquired trucks from its sister company in Texas and through the acquisition of a competitor, Ocean Lakes Construction Company, for the purpose of expanding its in-house trucking operation, while falsely representing to Hall's that it neither asked for nor wanted the trucks. Hall's presented evidence showing that these false representations were material because they induced Hall's to purchase the APAC fleet and persuaded Nations-Bank to provide financing for the acquisition. Hall's also presented evidence that its reliance on APAC's promise of $4 million per year in business was reasonable because APAC was a large company that had provided its outside truckers with over $4 million in business in previous years. In addition, Hall's presented evidence that it incurred expenses purchasing the APAC fleet and preparing for the increased business, and that it lost money and was forced to go out of business because of APAC's fraud. Finally, Hall's presented evidence establishing that APAC failed to perform the contract from the contract's inception.

Viewing the evidence in the light most favorable to Hall's, see Wildewood, 52 F.3d at 502, we hold that the jury's verdict on the fraud claim is supported by substantial evidence. A jury could properly reach the conclusion that Hall's had proven by clear, cogent, and convincing evidence each element of fraud. Thus, we affirm the district court's denial of APAC's motion for judgment as a matter of law on the fraud claim.

Alternatively, APAC argues that it is entitled to a new trial on the fraud claim because the district court's instructions to the jury were

6

flawed. According to APAC, the district court did not properly instruct "the jury of the need and the standards for distinguishing the" fraud and contract claims. (Appellant's Br. at 29.) Instead, APAC argues, "the court's instructions tended to gloss over the[ ] distinctions [between fraud and contract] and further amalgamated rather than disentangled the claims." (Appellant's Br. at 30.) We review the district court's denial of APAC's motion for a new trial for abuse of discretion. See Wildewood, 52 F.3d at 502; Bristol Steel & Iron Works, Inc. v. Bethlehem Steel Corp., 41 F.3d 182, 186 (4th Cir. 1994).

Upon reviewing the court's instructions to the jury, we find nothing in the instructions that "rose to the level of error, let alone prejudicial error." Hardin v. Ski Venture, Inc., 50 F.3d 1291, 1296 (4th Cir. 1995). First, APAC did not argue, and we do not find, that the jury instructions were not accurate. Cf. id. at 1294 ("A set of legally accurate instructions . . . is generally adequate."). Indeed, APAC acknowledges the accuracy of the jury charge, conceding that the trial court charged that mere breach of contract did not constitute fraud and that nonperformance may warrant an inference of fraud only when coupled with "other evidence," and that the trial judge gave instructions on the burdens of proof applicable to fraud and to breach of contract.

Second, despite APAC's protestations, our review of the record reveals that the district court specifically instructed the jury on the distinctions between fraud and breach of contract. As to the burden of proof for fraud, the court clearly stated that"[i]n order to prevail in an action based upon fraud, the plaintiff must show [by] clear, cogent[,] and convincing evidence the following nine elements . . . ." (J.A. at 523.) Furthermore, the record reveals that the trial court carefully instructed the jury on the different elements of each claim. Indeed, to avoid confusion among the four claims, the court submitted the case with separate verdict forms for each claim. Finally, we note that APAC has failed to bring to our attention any evidence that the jury was confused by the district court's charge. As a result, we hold that the district court did not abuse its discretion in denying APAC a new trial. See Hardin, 50 F.3d at 1296.

III.

Because we affirm the district court's denial of APAC's motions on the fraud claim for judgment as a matter of law and for a new trial,

we affirm the jury's award of $2.4 million in compensatory damages and $800,000 in punitive damages. See Elders v. Parker, 332 S.E.2d 563 (S.C. Ct. App. 1985) (holding that plaintiff was entitled to punitive damages where evidence supported a finding of fraud). Because we affirm the jury's award to Hall's of compensatory and punitive damages on the ground that APAC committed fraud-- and because those awards mirror the damage awards under the breach of contract and breach of contract accompanied by a fraudulent act claims -- we need not consider whether the district court erred in denying APAC's motions for judgment as a matter of law and for a new trial on those claims. Cf. Winant v. Bostic, 5 F.3d 767, 775 (4th Cir. 1993) ("Having found that there was sufficient evidence to allow the fraud claim to go to the jury, we need not consider appellants' challenges to the denial of their motion for judgment as a matter of law on the other counts."); Polo Fashions, Inc. v. Craftex, Inc., 816 F.2d 145, 149 (4th Cir. 1987) ("We need not consider whether, under these circumstances, the plaintiff was entitled to an award of damages under the Lanham Act, for it clearly was entitled to such an award upon its common law claim of unfair competition and its claim under North Carolina's Unfair Trade Practices Act."); Anderson v. West, 241 S.E.2d 551, 553 (S.C. 1978) ("We hold that where a jury returns a general verdict involving two or more issues and its verdict is supported as to at least one issue, the verdict will not be reversed."). Accordingly, the judgment below is affirmed.

AFFIRMED

8